Sara **FEDER**, Plaintiff,

v.

Robert D. **HARRINGTON** et al., **Defendants.**

No. 67 Civ. 1531.

United States District Court, S. D. New York.

Dec. 13, 1972.

Sheib, Shatzkin & Cooper, New York City, for plaintiff Sara Feder.

Debevoise, Plimpton, Lyons & Gates, New York City, for defendants Robert D. Harrington, John R. Gosnell and The Paul Revere Corp.

Cravath, Swaine & Moore, New York City, for defendant Avco Corp.

Gerald D. Fischer, New York City, for objectant Sheila B. Fischer and pro se, as custodian for Howard A. Fischer.

## OPINION

MacMAHON, District Judge.

This is an application for approval of a settlement under Rule 23(e), Fed.R. Civ.P., and attorney's fees in this class action. An objectant also moves to intervene as an additional party plaintiff.

The plaintiff class, consisting of more than 26,000 shareholders of Avco Corporation ("Avco"), complains that Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b(5) of the Securities Exchange Commission were violated by defendants when the Paul Revere Corporation ("Revere") purchased some of their Avco stock allegedly without full disclosure about a possible merger between Avco and Revere. Defendants are Avco, Revere, and one officer of Revere, Robert D. Harrington, and one officer of both Avco and Revere, John R. Gosnell. They deny any violation of the Securities Act.

Negotiations between Avco and Revere toward a merger began in November 1966, but were terminated on January 10, 1967. Later, on January 27, 1967, Revere announced a tender offer for 4,000,000 shares (28%) of Avco stock at $33 a share, a price $4.50 higher than the market on January 27, 1967 and $8.-77 higher than the market price during the first three weeks of January 1967. The same day, Avco issued a press release, reported in The Wall Street Journal of January 30, 1967, that it would not oppose Revere's tender offer and that it held Revere's management in high regard.

Against this background, the tender offer, dated February 3, 1967, stated concerning the merger negotiations that:

> "The Purchaser [Revere] has had discussions with the management of Avco Corporation regarding a possible merger with the latter, but no agreement or understanding regarding such a transaction was reached."

In response to the offer, 9,200,000 shares were tendered and Revere purchased 4,000,000 of them on a pro rata basis on February 17, 1967. Merger negotiations between Avco and Revere were resumed on February 28, 1967 and publicly announced on March 10, 1967. This suit was filed by the single named plaintiff on April 18, 1967, the day the price of Avco reached $42 a share.

Plaintiff conducted extensive discovery and thereafter moved to have the action declared a class action. On December 31, 1970, this court found that a class action was appropriate [1] but placed the complete financial burden of notice to the class, required by Rule 23(c)(2), Fed.R.Civ.P., on the named plaintiff because it found that "there is considerable doubt about the success of plaintiff's claim."[2]

The proposed settlement was the result of extensive negotiations in the winter of 1971 and the spring of 1972 and

---

1. Feder v. Harrington, 52 F.R.D. 178 (S.D. N.Y.1970).

2. *Id.* at 185.

was submitted to us on July 11, 1972. It provides for a release of the defendants from all claims in connection with the subject matter of the complaint or the amended complaint. In exchange, defendant Revere will create a settlement fund of $550,000 and pay all costs and expenses in connection with the administration of the settlement up to $80,000, other than legal fees but including the costs of notice to the 26,000 members of the class. Under the agreement, each member of the class is entitled to file a proof of claim and to receive his pro rata share [3] of the settlement fund remaining after payment of attorney's fees; the cost of supplemental notice, if required,[4] and certain administration costs.[5]

The notice to the class provides that members may either "opt out" or accept the settlement and file a proof of claim. One objectant, who had not exercised his right to "opt out," appeared at the hearing before us on September 28, 1972 in opposition to the settlement. He stated that he represented his wife and minor son, who were holders of 19 shares of Avco and who had tendered their shares to Revere in 1967. He conceded at the outset that the attorney for the plaintiff was competent and had his full confidence and that he had done a "sterling job" in his discovery.

His objection, however, was based on the claim that the settlement was inadequate in light of the damages asserted in the complaint, i. e., $9 a share. He disagreed with the attorney for the plaintiff, who had realistically appraised damages, if liability were established, at $1 a share. In arguing for his position,

he ignores, mistakenly, the amount contributed by defendants towards plaintiff's expenses. He seems to urge that except for the size of the expenses the settlement would not have been made.

The expense of litigation is a proper element to consider in determining whether to proceed with litigation. Expense should be weighed against the chance of recovery. As our Court of Appeals recently noted, the role of the trial court in passing upon the propriety of a settlement of a derivative or other class action is a delicate one.[6]

In the normal case, there is a public policy favoring settlement. This policy exists not only in the interests of judicial economy but also because litigants should be encouraged to determine their respective rights between themselves. In a derivative or class action, however, the court has another policy to observe, and that is the protection of parties who are not before the court from a collusive or improvident settlement.

These two policies have resulted in apparently contradictory propositions advanced by the courts. Some approach the question of whether a settlement is fair with the proposition that "the proponents of a compromise have the burden of proving its fairness."[7] Others start with the premise that there is a "strong initial presumption that the compromise is fair and reasonable."[8]

In a class action, both propositions are involved. The proponents of the settlement should have the burden of proving: (1) that it is not collusive but was arrived at after arm's length nego-

3. For example, if one-half of the class did not file claims, one-half of the fund would be remitted to Revere and one-half would be distributed to those members who filed claims.

4. A supplemental notice is required if the proofs of claim are less than 50% of the total number of shares represented by the class.

5. Costs over $80,000, up to $130,000, and 50% of any costs in excess of $130,000.

6. Saylor v. Lindsley, 456 F.2d 896, 904 (2d Cir. 1972).

7. Zerkle v. Cleveland-Cliffs Iron Co., 52 F.R.D. 151 (S.D.N.Y.1971).

8. Josephson v. Campbell, CCH Fed.Sec.L. Rep. [1967–69 Transfer Binder] ¶ 92,347, at 97,658 (S.D.N.Y.1969).

tiation;[9] (2) that the proponents are counsel experienced in similar cases;[10] (3) that there had been sufficient discovery to enable counsel to act intelligently;[11] and (4) that the number of objectants or their relative interest is small.[12]

If the proponents establish the foregoing facts, then the same presumption in favor of a settlement should prevail as in any normal case, and the burden of attacking the settlement should prevail as upon the objectant.

In this case, the proponents of the settlement have clearly established an absence of collusion and the existence of experienced counsel. Even the objectant has conceded that he has the highest regard for counsel for plaintiff. All counsel here are able and respected members of the bar of this court. Their integrity and professional skill is unquestioned. Plaintiff's counsel have successfully appeared in many class actions brought under Section 10(b) of the Securities Exchange Act, and there is not the slightest hint that they would shy away from a trial if one were in the best interests of their client.

Proponents have also demonstrated that exhaustive discovery has been conducted in this case, and even the objectant recognized and complimented plaintiff's counsel on his discovery efforts. The proponents of the settlement have, thus, established the factors which bring the presumption in favor of settlement into play. This strong initial presumption of fairness still must withstand the universally recognized test of the plaintiff's likelihood of success.

The function of the court is to reach a determination of the probabilities of ultimate success should the case be tried. This requires an educated estimate of the strength and weakness of the plaintiff's case in light of the novelty and complexity of the legal questions, the issues of fact, the expense involved, and the likely duration of the suit.[13]

At the outset, we cannot ignore that after all discovery had been completed and the facts developed laid before the court, Judge Tenney found that:

"There is considerable doubt about the prospects of plaintiff's success in the within action." [14]

While Judge Tenney's views are not binding upon us, they deserve significant weight because no more evidence of plaintiff's success is before us than was before him. Still, we must make our own analysis. This case must be tried by a jury and there are sharply disputed issues of fact as to nearly every element of the plaintiff's case, and as to some of the elements the law is unsettled.

If there are issues of fact and questions of law which make any recovery problematical, the determination of whether the amount to be paid in settlement is fair is not a matter of mathematical science. It may be that plaintiff's attorney has obtained more for the class than a jury would award.

9. Lessac v. Television Electronics Fund, Inc., CCH Fed.Sec.L.Rep. [1967–69 Transfer Binder] ¶ 92,305 (S.D.N.Y. 1969).

10. Fox v. Glickman Corp., 253 F.Supp. 1005, 1013 (S.D.N.Y.1966); Cherner v. Transitron Electronics Corp., 221 F.Supp. 48, 51 (D.Mass.1963).

11. Percodani v. Riker-Maxson Corp., 50 F.R.D. 473 (S.D.N.Y.1970); McGough and Lerach, "Termination of Class Actions: The Judicial Role," 33 U.Pitt. L.Rev. 445, 461 and cases cited therein at n. 68 (1972).

12. Fox v. Glickman Corp., *supra*, 253 F. Supp. at 1013 (21 objectants out of 30,000 shareholders, sufficiently few to indicate fairness of settlement); Josephson v. Campbell, *supra*, CCH Fed.Sec.L.Rep. at 97,658.

13. Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424–425, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968).

14. Feder v. Harrington, *supra*, 52 F.R.D. at 185.

■ The court is in no position to substitute its judgment for that of honest competent attorneys who, after exhaustive discovery have made a determination that 16% of the realistic damages is a fair appraisal of their chances for ultimate success. The recovery, while substantial in actual figures, is a small percentage of the amount claimed. That does not mean, however, that the settlement is unfair or even suspect.

> "[T]he role of the Court is limited to the extent that its business judgment is not to be substituted for that of the parties who worked out the settlement, and . . . the only question before us is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval." [15]

■ We must first determine whether material issues of fact and questions of law exist. It is not the court's function on this motion to decide these issues. Indeed,

> " '[t]he very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation', the court must not turn the settlement hearing 'into a trial or a rehearsal of the trial.' " [16]

■ There is a real issue of law as to whether failure to disclose the subjective intent of Revere "to merge with Avco" is a material omission of fact in this case, for as our Court of Appeals put it:

> "It would be as serious an infringement of these regulations to overstate the definiteness of the plans [to merge] as to understate them." [17]

A further question of law or fact exists as to whether in the circumstances the failure to disclose that Revere and Avco intended to resume negotiations after the tender offer was a *material* omission. A jury could find that any reasonable person would have expected just such result. Such a finding would be supported by the activity of the market after the tender offer and before the resumption of negotiations.

On the elements of reliance and damages, there are also sharp issues which could go against plaintiff. The price of the Avco stock had risen $4 in the three weeks prior to the tender offer. The tender offer added a premium of $4.50 so that the holder who bought in January had a 33% gain on his investment in one month. After the termination of the tender offer and before negotiations were resumed, the price of the stock increased so that by the time the negotiations were announced the price of the stock had risen another $5. It thereafter went up another $4 by the date this action was filed.

If there were a material misrepresentation and reliance, the causal relation between such misrepresentation and any damage would be a subject requiring proof of a complex of facts and expert testimony. It is highly doubtful that the rise in price before the resumption of negotiations was due to anything more than the public's valuation of the stock, or perhaps, more likely, public an-

15. Glicken v. Bradford, 35 F.R.D. 144, 151 (S.D.N.Y.1964). *See,* Newman v. Stein, 464 F.2d 689 (2d Cir. 1972) (a 14% settlement approved, even though success was likely but not sure).

16. Newman v. Stein, 464 F.2d 689 at p. 692 (2d Cir., 1972).

17. Electronic Specialty Co. v. International Controls Corp., 409 F.2d 937, 948 (2d Cir. 1969) ; General Time Corp. v. Talley Indus., Inc., 403 F.2d 159 (2d Cir. 1968). Plaintiffs fare no better by alleging that because Gosnell is a fiduciary of Avco, either Revere or Gosnell had a duty to reveal Revere's intentions to them. Plaintiffs' theory assumes that the purchaser of the shares owed a fiduciary duty to them to make wide disclosure. However, they allege only that Gosnell had a fiduciary duty to Avco, not Revere. Further, Gosnell did not purchase any shares himself. Even if Gosnell were liable, we should be slow to set aside a business judgment that Revere could better afford to pay a settlement than Gosnell could afford to pay a judgment.

ticipation that a merger was a probability.

In view of these issues, we cannot say that plaintiff's attorneys were wrong in their appraisal of the ultimate outcome. It may be that they have obtained more than the class should receive.

■■ Objectant's only other point is that the notice of settlement which was mailed within the notice to the class was improper because it contained reference to Judge Tenney's observation that there is considerable doubt about the success of plaintiff's claim. The reference was approved by the court in the exercise of its discretion. Inasmuch as the notice was sent at the same time that class members were being given an opportunity to "opt out," it was deemed fair to give them Judge Tenney's appraisal as a fact to be considered in making their election to be bound by the settlement or to withdraw from the class." [18]

We find that the notice was proper and that the settlement is fair and equitable.

The approval of the settlement also disposes of objectant's motion to intervene.[19]

The final matter before us is the application for attorney's fees by counsel for the named plaintiff. They request $150,000 or 24% of the benefit conferred upon the class. This substantial fee is requested for the extensive work required during the five years of this lawsuit.

Unquestionably this litigation has been strenuous and well fought. Defendants have been represented by two large New York City law firms of considerable resources. Against this stern opposition, plaintiff's counsel undertook extensive discovery. These efforts were successful insofar as discovery uncovered the two memoranda from Revere's bank, which may well have led to the settlement. Against strong opposition, counsel won a motion to declare this action a class action. Thereafter, more litigation was required to determine the form of the order creating the class. Extensive settlement negotiations led to the complex compromise formula. Then, counsel appeared before us for conferences respecting the procedure for giving notice of the proposed settlement and for a hearing seeking its approval. All of counsel's many briefs have been thoroughly researched and their affidavits full and complete. They have represented the class well in a long and arduous battle.

■■■ The key criterion for the award of counsel fees is not the time spent but the amount of the recovery.[20] This is especially true where counsel are retained solely on a contingent fee basis, as here.[21] Traditionally, courts in this district and elsewhere have awarded fees of 20% to 30% of the recovery.[22] The fees requested by counsel are within the appropriate range and their work has been of high quality. We, therefore, find that the $150,000 fee requested is fair and reasonable.

Accordingly, as we have already ruled by memorandum endorsement on the motion papers before the filing of this opinion, the application of the named plaintiff and defendants for approval of the proposed settlement is granted. Ob-

18. It should be noted that the objectant had the right not to be bound by the settlement by "opting out." He chose not to do so, and he will, therefore, be bound by our determination here.

19. The motion is made only upon the condition that the objections to the settlement are sustained. Since we have overruled the objections, the motion is necessarily denied.

20. Percodani v. Riker-Maxson Corp., CCH Fed.Sec.L.Rep. [Current Decisions] ¶ 93,337 (S.D.N.Y.1972).

21. Perlman v. Feldmann, 160 F.Supp. 310 (D.Conn.1958).

22. Rosenfeld v. Black, CCH Fed.Sec.L.Rep. [Current Decisions] ¶ 92,875 (S.D.N.Y. 1972).

jectant's motion to intervene is denied. The application of the law firm of Sheib, Shatzkin & Cooper for approval of a fee of $150,000 is granted.

So ordered.