TECHNOLOGY FUND, INC., et al., Plaintiffs,

Harris Simonson and Carmine Porrazzo, Plaintiffs-Intervenors,

Jordan Jay King and Dorothy King (for themselves and derivatively on behalf of Supervised Investors Summit Fund, Inc.), and Melvin M. Stoller and (for himself and derivatively on behalf of Technology Fund, Inc.), and Jordan Jay King et al., Plaintiff-Intervenors,

v.

KANSAS CITY SOUTHERN INDUSTRIES, INC., et al., Defendants.

Jordan Jay KING and Dorothy King (for themselves and derivatively on behalf of Supervised Investors Summit Fund, Inc.), and Melvin M. Stoller and (for himself and derivatively on behalf of Technology Fund, Inc.), and Jordan Jay King et al., Plaintiffs.

v.

KANSAS CITY SOUTHERN INDUSTRIES, INC., et al., Defendants.

Harris J. SIMONSON, Plaintiff,

v.

John HAWKINSON et al., Defendants.

Sidney SCHWARTZ and Estell N. Schwartz, individually and on behalf of all other shareholders of Technology Fund, Inc., and derivatively on behalf of Technology Fund, Inc., Plaintiffs,

v.

John HAWKINSON et al., Defendants.

Larry Howard RIFKEN and Stuart T. Edelstein, Plaintiffs,

v.

KANSAS CITY SOUTHERN INDUSTRIES, INC., et al., Defendants.

Kenneth HERMAN, Plaintiff,

v.

SUPERVISED INVESTORS SERVICES, INC., et al., Defendants.

Nos. 71 C 2349, 71 C 2141, 72 C 12, 72 C 13, 71 C 2116 and 72 C 14.

United States District Court, N. D. Illinois, E. D.

Sept. 22, 1976.

---

## MEMORANDUM OPINION

WILL, District Judge.

### I. BACKGROUND FACTS

All of the cases here involved arise from the 1970 merger of Supervised Investors Services, Inc. (SIS), the manager of four open-end diversified investment companies, into Kemperco, Inc. (Kemperco), a Chicago-based insurance and financial services holding company. The four investment companies were Technology Fund, Inc., Supervised Investors Summit Fund, Inc., Balanced Income Fund, Inc., and Supervised Investors Growth Fund, Inc. (Funds). At the time of the merger, the SIS common stock was owned 54% by Kansas City Southern Industries, Inc. (KCSI) and the balance by the officers and directors of SIS, John Hawkinson, Russell H. Matthias, Chester D. Tripp, Courtenay C. Davis, John L. Porter, Jr., and J. Milburn Smith.

SIS net assets at the time of the merger were approximately $1,500,000. The market value of the securities in the four funds which SIS managed exceeded $900,000,000. In 1969, the year preceding the merger, SIS received an aggregate of $4,700,000 for its management of the four funds in advisory fees and from underwriting commissions.

In connection with the merger, it was necessary to get the approval of the shareholders of each of the four funds to new advisory and underwriting contracts since the old contracts would automatically terminate by operation of law at the time of the merger. As part of the merger agreement, SIS agreed to recommend to the shareholders of the Funds that they approve new contracts with the successor to SIS which was to have the same name.

To secure approval of the new contracts, proxy material over the signature of Hawkinson and indicating the concurrence of

the other individual defendants was sent to the shareholders of the Funds, urging their approval of the new contracts. The new contracts were formally approved by the shareholders and in May 1970 the merger went through.

The six actions here involved were filed within two years thereafter. Four were filed as straight shareholder derivative suits (Rifkin, 71 C 2116; Simonson, 72 C 12; Herman, 72 C 14; and Schwartz, 72 C 13); one (King, 71 C 2141) was filed as both a derivative and a shareholder class action and the sixth was a direct action filed by the four funds (71 C 2349). We denied the King plaintiffs' motion to declare a class action, stayed the four derivative actions, permitted the Funds' direct action to proceed but permitted the Kings and all other derivative plaintiffs to intervene in the direct action to insure vigorous prosecution of the claims.

All of the suits alleged the same basic grounds. The defendants were charged with having sent materially false and misleading proxy statements to the shareholders of the Funds. Accordingly, it was alleged that the new advisory and underwriting contracts were void. The defendants were also charged with having sold a fiduciary position on the ground that the SIS-Kemperco merger was really a sale of their power as directors and officers of SIS as well as of the Funds. In this connection, it was alleged that the aggregate value of the Kemperco securities received by KCSI and the individual defendants was $19,000,000 for the SIS shares which had a book value of only $1,500,000. This was evidence, plaintiffs asserted, that what was really being sold was the defendants' power as directors and officers to control the more than $900,000,000 in assets of the Funds. The transaction was alleged to violate various federal securities laws and regulations and to fall within the holding in *Rosenfeld v. Black*, 445 F.2d 1337 (2d Cir. 1971) that an investment advisor to a mutual fund is personally liable for profiting from the appointment of a new advisor on his recommendation.

After we denied the class action motion, the Kings appealed, but their appeal was dismissed as premature. Thereafter, the parties negotiated a settlement of $1,400,-000 which we approved after a hearing. We also required the defendants to deposit the settlement amount forthwith. This was done because, as part of the settlement, the Kings had reserved their right to appeal our class action denial. All plaintiffs, including the Kings, agreed that, given the uncertain state of the law with respect to the right of managers and advisors to sell their advisory and underwriting contracts, and the cost of litigating the case plus the inevitable appeals, the settlement, though modest, was a fair one. With some reluctance, we concurred in that conclusion.

The Kings did appeal the class action denial and the Court of Appeals affirmed our handling of the class action, derivative actions and the Funds' direct action. There remains, therefore, only the determination of the fees to be allowed counsel for the various plaintiffs other than counsel for the Funds.

## II. THE COUNSEL SEEKING COMPENSATION

The various counsel seeking fees and reimbursement for expenses are the following:

1. Weinstein & Levinson of New York and Neistein, Richman, Hauslinger & Young, Ltd. of Chicago, counsel for Plaintiff in Herman (72 C 14);

2. Sachnoff, Schrager, Jones & Weaver, Ltd. of Chicago, counsel for plaintiffs in King (71 C 2141); and

3. Mordecai Rosenfeld and Pomerantz, Levy, Haudek & Block of New York, and Perlman, Rubin & Schulman of Chicago, counsel for the plaintiff in Simonson (72 C 12).

No request for allowance of compensation on behalf of counsel for the Funds—Prins, Flamm & Susman, Ltd. of Chicago—has been made since they have been compensated directly pursuant to their agreement with the Funds. We have, however, required them to disclose the amount which

they have received as fees and expenses. They also originally filed the complaint in Rifkin (71 C 2116).

In connection with our consideration of the reasonable fees to be allowed to plaintiffs' counsel, we also requested and have received on a confidential basis the fees paid by the defendants to their counsel, A. Bradley Eben of Chicago, counsel for SIS and the six individual defendants, Hawkinson, Matthias, Davis, Porter, Smith and Tripp; Winston & Strawn of Chicago, counsel for Kemperco and Lumbermens Mutual Casualty Co., and Jenner & Block of Chicago, counsel for Kansas City Southern Industries, Inc.

The amounts sought by counsel for the plaintiffs are respectively:

| | | Fees | Expenses |
|---|---|---|---|
| 1. | Weinstein & Levinson and Neistein, Richman, Hauslinger & Young, Ltd. | $ 15,000 | $ 232.88 |
| 2. | Sachnoff, Schrager, Jones & Weaver, Ltd. | $ 20,000 | $1,416.00 |
| 3. | Mordecai Rosenfeld, Pomerantz, Levy, Haudek & Block and Perlman, Rubin & Schulman | $190,000 including of expenses | $6,340.29 |
| | TOTAL | | $226,648.88 |

## III. CRITERIA FOR DETERMINING REASONABLE FEES

■ While the criteria for determining reasonable fees in derivative and class actions are still in process of evolution and clarification, a number of recent decisions as well as the Manual for Complex Litigation have delineated certain factors to be taken into consideration in arriving at allowances to counsel. *See, e. g., Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir. 1973) (Lindy I); *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir. 1976) (Lindy II); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974); *Liebman, et al. v. J. W. Petersen Coal & Oil Co. et al.,* 63 F.R.D. 684 (N.D.Ill.1974); Manual for Complex Litigation, § 1.47.

While the facts in the foregoing cases vary considerably, certain basic principles are reflected in each of them. First, it is clear that the trial judge has the responsibility and the authority to exercise an informed discretion in the fixing of reasonable fees. Second, all of the opinions point out that the first inquiry should be into the hours actually spent by the attorneys and for what purposes. In *Lindy I,* the court stated, page 167, *supra,*

"It is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney. But without some fairly definite information as to the hours devoted to various general activities, e. g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e. g., senior partners, junior partners, associates, the court cannot know the nature of the services for which compensation is sought."

The second inquiry which the opinions suggest relates to the value per hour of the various attorneys' services. In arriving at a reasonable hourly rate for each attorney's time, the court should take into account his legal reputation and his status as a partner or an associate and it is not only reasonable but appropriate for different attorneys to be allocated different rates of compensation and also for the same attorney to be allocated different rates of compensation for different activities. After a reasonable fee has been determined on the basis of hours devoted, which the *Lindy* court stated should be the "lodestar" of the trial court's fee determination, at least two other factors should be taken into account. One is the contingent nature of success; the second is the extent, if any, which the quality of the attorney's contribution and services mandates increasing or decreasing his compensation. Inherent in these evaluations are the complexity and novelty of the issues presented, the quality of the work that the judge has been able to observe, and, of course, the amount of the recovery obtained. If the reasonable compensation

is increased or decreased as a result of these considerations, the court held that the district judge should set forth as specifically as possible the facts that support his adjustment.

The Manual for Complex Litigation approaches the question of reasonable fees with essentially the same criteria but points out that there are three additional factors in class actions:

> "(1) that in seeking and accepting employment as counsel for a judicially determined class an element of public service is involved; (2) the representation of the class by counsel is not a result of private enterprise but results from provision of an opportunity to represent the class by a judicial determination; and (3) the policy of the law in class actions, including antitrust actions, is to provide a motive to private counsel to represent consumers and to enforce the laws." Manual for Complex Litigation, p. 50

Virtually all of the courts recently considering the criteria to be applied in determining reasonable fees have rejected the concept that fees should be a percentage of the amount recovered although some earlier cases had awarded fees based on a percentage of recovery with the percentage running up to 30% of the amount recovered. See *e. g., Epstein v. Weiss,* 50 F.R.D. 387 (E.D.La.1970); CCH Fed.Sec.L.Rep. ¶ 92,-928; *Newmark v. RKO General, Inc.,* 332 F.Supp. 161 (S.D.N.Y.1971); *Feder v. Harrington,* 58 F.R.D. 171 (S.D.N.Y.1972); CCH Fed.Sec.L.Rep. ¶ 93,689; *Newman v. Stein,* 58 F.R.D. 540 (S.D.N.Y.1973); CCH Fed. Sec.L.Rep. ¶ 93,780.

■ As is evident from our opinion in *Liebman et al., supra,* we are in agreement with the approach adopted in the more recent decisions. Accordingly, we will attempt to determine the reasonable fees in this case by an examination of the hours involved, reasonable rates for various counsel and for various services performed, the nature and complexity of the action, the amount recovered, the contingent nature of the representation, and finally, recognizing in all of the foregoing that fees must be sufficient to provide an incentive to private counsel to represent plaintiffs in class actions.

## IV. THE REASONABLE FEES FOR COUNSEL HEREIN

As previously indicated, three sets of counsel seek fees for their services in these cases. The first comprises the firms of Weinstein & Levinson of New York and Neistein, Richman, Hauslinger & Young, Ltd. of Chicago, counsel for the plaintiff in *Herman v. Supervised Investors, Inc. et al.,* No. 72 C 14. They have presented a skeleton tabulation of 185 hours which indicates only in general terms the work performed and the identity of the attorney who performed any particular part of the work in question. They do state in their petition for fees that Frank Weinstein, Esq. of the New York Bar was in charge of the litigation for his firm and Harry A. Young, Jr., Esq. of the Illinois Bar was in charge of the litigation for the Neistein firm.

Mr. Frank Weinstein has been a member of the bar for more than 40 years, during which time he has been actively involved in the trial practice both at the trial and appellate levels and has been particularly active in stockholders derivative suits, representing both plaintiffs and defendants. He is clearly an expert in this field and an attorney of the first rank. Out of the 125 hours which his firm reports it devoted to the *Herman* case, he devoted 67 hours, while Mr. Sam Weinstein, whose background and experience are not delineated in the documents presented to the Court, contributed the other 58 hours.

Mr. Young has been practicing in Chicago for 15 years and has had general practice experience as well as considerable trial work, including securities and antitrust class actions. He has been designated as liaison or lead counsel in two substantial cases and has been involved in a number of others. He is an experienced class action attorney.

Unfortunately, the petition for fees submitted by the two firms gives only general information as to the services rendered, and

438

the identity of the attorneys performing them. Accordingly, it is very difficult to arrive at any determination of a reasonable hourly fee for the work performed by each. As a matter of fact, the figure of 185 hours is obviously only an estimate since the petition states "your petitioners (through members thereof and persons associated therewith) have devoted about 185 hours" to this action. Apparently, about 125 of these hours are attributable to the Weinstein firm and about 60 to the Neistein firm. Moreover, except for Messrs. Engerman and Myers for whom a customary hourly rate of $50 is certified, the affidavit of Mr. Young contains no definitive hourly charge for the Weinsteins or himself, although there is an estimate of $100 per hour for the Weinstein firm with no distinction between Frank and Sam.

The two firms have requested an award of $15,000 together with reimbursement of their disbursements and out-of-pocket expenses in the amount of $232.88. Such an award would represent an average of $81 per hour for the estimated 185 hours. As previously indicated, we lack much of the necessary information on which to calculate a reasonable fee. We start with an approximation of individual and aggregate hours, a general description of the work performed and inadequate information as to normal hourly charges. As a result, we have no alternative but to average the figures presented. If we assume that 185 hours were devoted by both firms to their case and that $70 per hour is a reasonable average figure for the hours of all counsel, we come to an aggregate fee of $12,950 plus $232.88 in expenses, or an aggregate of $13,182.88. In our opinion, this is more than reasonable and fair, particularly given the fact that we have no recollection of any substantial contribution to the disposition of these cases made by either firm since, as they recognize, the leading roles were taken by other plaintiffs' counsel.

The second application for fees is on behalf of the firm of Sachnoff, Schrager, Jones & Weaver, Ltd. of Chicago, who have requested fees in the amount of $20,000 and reimbursement of expenses in the amount of $1,416. In support of his firm's request, Mr. Sachnoff has filed an affidavit to which he has attached a computer print-out of firm time sheets. The affidavit and print-out reflect a total of 1,018 hours of his firm's time devoted to the case.

As Mr. Sachnoff acknowledges, most of that time was devoted to the ultimately abortive attempt to have the action declared a class one rather than the direct and derivative actions which the Court found to be appropriate. Mr. Sachnoff estimates that approximately 230 hours of the total of 1,018 hours were attributable to the derivative claims, including the drafting of pleadings, pretrial discovery work, certain factual investigations, legal research, court appearances in connection with the settlement and what Mr. Sachnoff refers to as a "watchdog" role. His affidavit further states that the normal non-contingent hourly billing rates for persons in his firm are paralegals—$20, associates—$40 and senior partners—$100.

As Mr. Sachnoff also acknowledges, his firm's participation in the derivative action was a relatively minor one, although the discovery activities, factual investigations, legal research, etc., were undoubtedly of some value in the overall evolution of the settlement of the case.

Unfortunately, because of the ambiguity resulting from the Sachnoff firm's efforts to sustain a class action for which all agree the firm is not entitled to be compensated from the settlement fund, it is impossible to determine precisely the aggregate number of hours devoted to the derivative action or the identity of the individual members, associates, and paralegals who were involved in the derivative aspects of the firm's activities. At $20,000 in fees for 230 hours of time attributable to the derivative claims, the firm would be compensated at an average hourly rate of $86.95. In order to achieve such an average, substantially all of

the work in question would have to have been performed by senior partners and little or none by associates and paralegals. This seems highly unlikely in view of the fact that it involved primarily preparation of interrogatories and other pretrial discovery work, factual investigations and legal research.

If we accept the firm's estimate of the total number of hours involved (230) and apply an average hourly rate for all of the firm's personnel of $70 per hour as we did previously in the case of the Weinstein-Neistein group, we arrive at a fee allowance of $16,100, which we believe to be fair under all the circumstances. Accordingly, the Sachnoff firm will be allowed fees in that amount plus reimbursement of its expenses in the amount of $1,416, or an aggregate of $17,516.

We come finally to the third group consisting of Mordecai Rosenfeld, Esq. of New York, the Pomerantz, Levy, Haudek & Block firm of New York and the Perlman, Rubin & Schulman firm of Chicago. Their request is for an aggregate of $190,000 included in which are expenses of $6,340.29.

In connection with this request, it must be noted that no information with respect to the participation of Mr. Rosenfeld has been provided. In addition, the Pomerantz firm keeps no time records as a matter of standard operating procedure but attempted to reconstruct an estimate of time spent based on examinations of diaries, internal docket sheets and files. It is obvious that the reconstruction is a rough one, since all of the estimates are in multiples of five or ten hours. Moreover, it is difficult to believe that all of the estimated hours could possibly have been spent on the activities to which they are attributed. The total number of hours involved is estimated to be 1,410, of which Mr. Pomerantz estimates he spent 320, Mr. Haudek 615, and Mr. Grossman 475 hours.

The Perlman firm has provided us with copies of their time sheets which reflect that two of the partners, Mr. Zavett and Mr. Bell, spent 33½ hours and one-half hour respectively on the case while an associate, Mr. Stuart D. Perlman, devoted 115 hours to the case.

If we accept the estimated number of hours of the Pomerantz firm and the recorded hours of the Perlman firm, the two firms spent an aggregate of 1,559 hours on the case.

The requested fee of approximately $184,000 represents slightly in excess of $118 per hour for the services of partners and associates. In calculating the fee request, Mr. Pomerantz in his affidavit states that his normal hourly charge on a non-contingent basis is $175, that of Mr. Haudek is $125 and that of Mr. Grossman is $50. Messrs. Zavett and Perlman each certify that their normal hourly non-contingent rate is $50 per hour.

Even accepting the generous hourly rates specified by Mr. Pomerantz for himself and Mr. Haudek, we arrive at an aggregate fee of only $164,425, assuming that the estimated hours are accurate. To that, Mr. Pomerantz has added a "contingency" fee of approximately $20,000 to arrive at the $184,-000 aggregate fee.

In connection with the criteria previously referred to, it must be noted that Mr. Pomerantz is certainly one of the outstanding, if not the preeminent, plaintiffs' class action counsel in the United States and has had wide experience in various types of complex litigation. Mr. Haudek, though somewhat younger, is also an experienced attorney in complex cases. We recognize Mr. Pomerantz's skill and wide experience and are prepared to award a high hourly rate to him. It is to be noted, however, that Mr. Sachnoff, who is also one of the outstanding class action counsel in the United States, represents to the Court that his hourly charge on a non-contingent basis is $100. While Mr. Pomerantz may command $175 per hour in dealing with clients and cases in New York, reasonable fees for a man of his prestige and experience apparently are lower in Chicago.

We believe that an allowance of $150 per hour to Mr. Pomerantz is a generous hourly charge. Similarly, we believe that an al-

lowance to Mr. Haudek of $100 per hour is also very fair. Messrs. Grossman, Zavett and Perlman, we believe, are entitled fairly to be compensated at the rate suggested of $50 per hour.

We pointed out in *Liebman, supra*, that in the future we would not accept estimates of time devoted to complex cases and other vague and general information as to services rendered in dealing with fee applications. Virtually all of the time spent by the Pomerantz firm in this case, however, predates that opinion. Accordingly, we will accept the rough and, we feel confident, generous estimates made by the Pomerantz firm with respect to the hours which they have devoted to this case. Calculating the hourly charges based on the revised hourly rates, we arrive at the following allocation of fees:

**Pomerantz Firm**

| | | |
|---|---|---|
| Mr. Pomerantz: | 320 hours x $150 | $48,000 |
| Mr. Haudek: | 615 hours x $100 | $61,500 |
| Mr. Grossman: | 475 hours x $ 50 | $23,750 |
| | | $133,250 |

**Perlman Firm**

| | | |
|---|---|---|
| Mr. Zavett: | 33½ hours x $ 50 | $ 1,675 |
| Mr. Bell: | ½ hour x $ 50 | $ 25 |
| Mr. Perlman: | 115 hours x $ 50 | $ 5,750 |
| | | $ 7,450 |
| TOTAL | | $140,700 |

We make no allowance for a so-called additional "contingency" element in awarding the fees herein for several reasons. First, it is to be noted that the aggregate of fees awarded by this opinion does not constitute the aggregate of fees to be paid out of the $1,400,000 recovery since the compensation of counsel for the Funds has been paid directly by the Funds to them and is a significant additional amount, although approximately 40% less than the allowance made herein to the Pomerantz group alone. It is noteworthy in passing that the total number of hours devoted by the Prins firm to these cases is also substantially less than the estimate of the hours devoted by the Pomerantz firm alone.

In addition, the compensation awarded to the Pomerantz firm exceeds substantially the fees received by any of the skilled counsel for the defendants who were compensated on a non-contingent basis although accomplishing a very satisfactory result for their clients. In effect, the allowances here reflect compensation for the result achieved by plaintiffs' counsel and no additional contingency factor is warranted.

In passing, we note that there is substantial disagreement between Mr. Pomerantz and Mr. Susman as to the relative contribution to the ultimate $1,400,000 settlement made by each firm. Finally, the settlement was a comparatively modest one given the alleged profit of some $19,000,000 realized by the selling shareholders. Under all of the circumstances, we believe that an allowance of $140,700 in fees to the Pomerantz group plus reimbursement of $6,340.29 in expenses is fair and reasonable.

An order consistent with all of the foregoing will enter.