Willie L. WILLIAMS et al., Plaintiffs,

v.

Leo B. RYAN et al., Defendants.

Willie L. WILLIAMS et al., Plaintiffs,

v.

MAYOR AND ALDERMEN OF the CITY OF SAVANNAH, Defendants.

Civ. A. Nos. 3153, CV476–284.

United States District Court, S. D. Georgia, Savannah Division.

March 20, 1978.

Fletcher Farrington, Savannah, Ga., for plaintiffs.

James B. Blackburn, City Atty., Savannah, Ga., for defendants.

Roy L. Allen, II, Savannah, Ga., for objectors.

## ORDER ON MOTION FOR APPROVAL OF SETTLEMENT

LAWRENCE, District Judge.

### I

#### Findings of Fact

#### The Litigation

This action was brought on July 25, 1973, by 26 black officers of the Police Department of the City of Savannah and by two other black persons who were applicants for hire with the Department. The defendants were the chief of police, Leo B. Ryan, the Mayor, Aldermen, City Manager, Personnel Director and the City itself. Plaintiffs alleged discrimination on the basis of race in the promotion of patrolmen to supervisory rank. They also complained that defendants fail to hire blacks in sworn officer positions with the Department.

An announcement by the Department in the early summer of 1973 that a promotional examination for sergeant would be given

precipitated the filing of the suit. Asserting jurisdiction under 28 U.S.C. § 1343(4), plaintiffs claimed that the proposed examination would violate their rights under the Fourteenth Amendment and under 42 U.S.C. §§ 1981 and 1983. After several hearings, this Court allowed the examination to take place on September 8, 1973. A register of eligibles was established from which two white patrolmen were promoted to sergeant in 1974. There have been no competitive promotions in the Department since that time.

In September, 1973, plaintiffs filed charges of discrimination with the Equal Employment Opportunity Commission under Title VII of the Civil Rights Act of 1964. After receiving notice from EEOC in 1976 of their right to bring suit, plaintiffs sought to amend their original action by adding a Title VII claim. The amendment was denied. Plaintiffs thereupon brought a separate action under Title VII, 42 U.S.C. § 2000e et seq.[1] The two cases were consolidated and assigned for trial on October 25, 1977.

Shortly before the trial date, attorneys for both sides asked the Court to vacate the assignment because they were discussing settlement and thought they might reach agreement. On December 16, 1977, they filed a memorandum of settlement and a proposed decree. Upon motion of the parties, I ordered that notice of the proposed settlement be given to the class.

#### Class Action

At the time suit was filed, there were thirty-six black officers on the force. Eighteen left the force in the two years before the suit was filed. Since then, 33 additional black officers have been hired. There are now 55 on the force, the remainder having retired, resigned or been dismissed. A total of 87 persons may have been damaged by the challenged employment practices of the Department. The question of fact common

1. Under the 1972 amendment to § 2000e(a) municipalities and their subdivisions became subject to the Act as employers. *Monell v. Department of Social Services of City of New* *York,* 532 F.2d 259 (2nd Cir.), cert. granted on different ground, 429 U.S. 1071, 97 S.Ct. 807, 50 L.Ed.2d 789, 45 L.W. 3508.

to all of them is whether the defendants' promotional policies, based in large part on written tests, discriminates against them because of race.

Two plaintiffs alleged that they were racially discriminated against by not being hired. In the voluminous discovery procedures since 1973 I find nothing indicating that there are other persons with such claims despite efforts by the class representatives to locate such persons. The composition of the most recent recruit classes is more than 50% black.

### The Proposed Settlement

The class representatives and defendants have proposed to settle the case by promoting four black officers to sergeant and by adopting a new system of promotion. All those persons who were on the 1973 register of eligibles and who are still employed in the Department will be promoted to sergeant. Four of those nine officers are black. The effect of this will be that eleven sergeant's vacancies will have been filled as a result of the 1973 test. Of these, four (35%) of the sergeants will be black.

Future promotions to sergeant and other supervisory ranks will be made according to a system designed by McCann Associates, a professional employment testing firm. It was employed by the City to develop a promotional scheme meeting the requirements of Title VII and the objections of plaintiffs to the earlier methods.

The McCann system involves a two-step selection process. The first is a written test which has no predetermined cut-off score. The cut point will fluctuate for each test and will depend upon the number of projected vacancies and the number of applicants for those positions. Scores will not be used to rank-order applicants but will be used only as their means of entry to the second step of the process. For those persons who are "test-shocked" by failures on earlier tests, the Department has agreed to provide counseling. The counselor may be chosen by the individual, subject to departmental approval.

McCann Associates will use either a test developed and validated in North Carolina for use by municipal police departments in that state, or, if a job analysis shows that the sergeant's jobs for which the tests were developed are not similar to those in Savannah, it will develop a test especially for use in this City. In either event, there is provision for statistical validation of the test.

It is not necessary that an officer shall have served in the next lower rank to be eligible to take promotional tests. All he needs is to have passed any previous test for the next lower rank. Actual promotion to the rank is not required.

Those applicants who pass the written test will then be examined by a Board consisting of high-ranking police officers and members of the community. The Board will determine who is to be promoted, using its structured examination, the officer's record, and the written examination. It should be noted that presently two of the Department's five highest ranking officers are black. As such, they will serve on the Board which administers oral examinations.

The decree makes no provision for back pay to members of the class nor does it provide for counsel fees for attorneys for the class. The latter question is reserved to this Court for decision. For a period of three years defendants are required to report the results of testing and promotions within the Department to this Court and to plaintiffs.

## II

### Objections to the Decree

Each class member received notice of the proposed settlement. They were informed that they had the right to opt out of the class if they did not wish to be bound by a judgment entered as a result of the agreement. None elected to do so. However, on the last day for opting out, twenty class members filed a blanket objection to the proposed settlement through an attorney. Of these, five were not recruited until after the filing of the first Civil Rights action;

five were then employed as police officers but were not eligible for the testing; and seven failed to make the register for promotion under the test approved by the Court and given on September 8, 1973.

Two hearings were held. The first was on January 30, 1978. At that time counsel for the objectors was asked by this Court to state the basis for the objections. His request for time to respond was granted. On February 23rd a list of objections was filed. At the hearing on March 2nd a memorandum in support thereof was presented.

The objectors advance five reasons which they contend require disapproval of the settlement: (1) that it does not provide for back pay for members of the class; (2) the injunctive relief is inadequate, particularly with respect to testing; (3) that the Court should retain jurisdiction for a longer period than three years; (4) the decree should provide for quota hiring of blacks, and (5) that the promotional board is likely to conduct its business in an arbitrary and capricious manner.

### III

### Conclusions of Fact and Law

*Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597, involved alleged discriminatory testing procedures used in the recruiting of police officers in the District of Columbia. It was decided while this action was pending. The United States Supreme Court held that in suits brought under the "Reconstruction Era" civil rights acts, 42 U.S.C. §§ 1981 and 1983, plaintiffs bear the burden of showing that a challenged employment practice is the result of an intent to discriminate. Under that decision, practices which are fair in form do not become unlawful because they may have the effect of excluding a greater percentage of minorities from consideration for employment. Although there is convincing evidence in the record in this case to indicate that intentional discrimination has occurred in the Police Department in the past, the last act complained of which could be

called "intentional" within the meaning of *Washington v. Davis* occurred on June 21, 1972,[2] more than two years prior to the filing of the suit. There is no act of intentional discrimination in the record which could be reached under the Civil Rights statutes referred to. Neither the class representatives nor the objectors contend otherwise. Had the case gone to trial, I would have been inclined to rule that only Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* is applicable under the facts of this case.

Since the enactment of Title VII in 1964, the Courts have tended to put a premium on voluntary compliance and the compromise of claims thereunder. See *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 39 L.Ed.2d 147; *United States v. Allegheny-Ludlum Industries,* 517 F.2d 826 (5th Cir.); *Hutchings v. United States Industries,* 428 F.2d 303, 309 (5th Cir.); *Culpepper v. Reynolds Metals Co.,* 421 F.2d 888, 891 (5th Cir.); *Dent v. St. Louis-San Francisco R. Co.,* 406 F.2d 399, 402 (5th Cir.); *Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496, 498 (5th Cir.).

*Allegheny-Ludlum* at 849 answers the question of "through what lens," the adequacy of the settlement of a Title VII case is to be viewed. Borrowing from the analysis of Chief Judge Brown in *Florida Trailer and Equipment Co. v. Deal,* 284 F.2d 567 (5th Cir.) the Court held: "All that [the parties] must do is establish to the reasonable satisfaction of the [Court] that, all things considered, . . . it is prudent to eliminate the risks of litigation to achieve specific certainty though admittedly it might be considerably less (or more) than were the case fought to the bitter end." 517 F.2d at 849–50. The proponents of settlement are not required to establish as a matter of legal certainty that the claim is or is not worthless or valuable. While "probable outcome in the event of litigation" is a "relevant factor for evaluation," the policy of the law to encourage settlements takes into account "the very uncertainty of outcome in litigation, as well as

2. The date on which the last pre-suit promotional examination was given.

the avoidance of wasteful litigation and expense." *Ibid.*

■ The decisions establish six factors which the trial court should consider in exercising its judgment in approving or disapproving a proposed settlement.

1. The state of the proceedings including the amount of discovery, the likely duration, complexity and expense of the remaining steps of the litigation;

2. The adequacy of representation of the plaintiff class by the named plaintiffs, including the absence of collusion;

3. The nature of the claim, the possible defenses available to the defendant, and the likelihood of establishing liability on the substantive issues;

4. The likelihood of a damage award and the range of reasonableness of the settlement fund in light of the prospective recovery;

5. The extent to which the settlement has been approved by members of the plaintiff class; and

6. The determination of reasonable attorneys' fees. See, e. g., *Protective Committee v. Anderson*, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1; *United States v. Allegheny-Ludlum Industries, supra; Young v. Katz, supra; Detroit v. Grinnell Corp.*, 495 F.2d 448 (2nd Cir.); *Neuwirth v. Allen*, 338 F.2d 2 (2nd Cir.); *West Virginia v. Charles Pfizer & Co.*, 314 F.Supp. 710 (S.D., N.Y.), aff'd 440 F.2d 1079 (2nd Cir.), cert. denied 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115; *Manual for Complex Litigation* § 1.46.

■ The burden of showing that the settlement is fair, equitable and reasonable is on its proponents. *Hill v. Art Rice Realty Co.*, 66 F.R.D. 449 (N.D., Ala.). It is discharged if proponents show that the settlement is not collusive and was arrived at after arm's length negotiations; that the proponents are counsel experienced in similar cases; that there has been sufficient discovery to enable counsel to act intelligently, and that the number of objecting parties or their relative interest is small. *Feder v. Harrington*, 58 F.R.D. 171 (S.D.,

N.Y.). The proponents in this case have amply met that burden.

■ 1. The record before this Court is the one which has been prepared for purpose of trial. It is complete. No additional evidence is really necessary. The contention of objectors that there is a lack of sufficient data on which to base a judgment is without merit. However, there would remain, if liability were established at trial, the complex and time-consuming problem of fashioning relief. The proponents appear to be weary of litigating and the objectors themselves have indicated that they do not wish to be burdened by lengthy, continued litigation.

2. The class is represented by counsel skilled in this type of litigation and there has been no collusion.

3. As noted earlier, the defenses available to defendants on the claims under 42 U.S.C. §§ 1981 and 1983 would probably require a ruling in their favor. We may assume for the purposes of this analysis that plaintiffs would have prevailed on their Title VII claim. The question then becomes, "What relief would be ordered?" The City might be ordered to stop using the offending test. I could direct defendant to adopt professionally developed objective standards for granting promotions within the Department. The Court might also order that certain vacancies be filled by members of the class. All of those varieties of relief are accomplished by the consent decree.

Objectors complain that the decree does not go far enough. They say that the City should hire a second outside agency to oversee the efforts of another outside agency, McCann. This Court's supervision of the decree is all the "outside agency supervision" that Title VII requires. The consent decree provides therefor.

Objectors also urge that the McCann proposal is deficient because there is no "before the fact" validation study. The Employee Selection Guidelines of the Equal Employment Opportunity Commission, 29 CFR § 1607, set forth the strictest stan-

dards under which employment tests are to be judged.[3] If the case were tried, I would hold that the tests are being used in a manner which does not offend the provisions of 29 CFR § 1607.3 and that the McCann proposal meets the validation requirements of 29 CFR §§ 1607.5 and 1607.7.

4. The last promotion before suit was filed occurred in May, 1972, more than 18 months prior to the filing of the earliest EEOC charge. Even if that promotion were shown to be discriminatory, it is apparently too late to do anything about it in this Title VII suit. *United Air Lines Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571. The only other promotions were the two granted under supervision of the Court in 1973. Even if the objectors could establish that those promotions were unlawful, it is doubtful that they could show that, under a fair system, they would have received both positions. If they did, the amount of back pay for those two positions would amount to only $9,000 or about $100 per class member. None of the individual objectors claims that he is entitled to back pay. Recovery of back pay in this case is speculative and, in any event, minimal. Yielding by plaintiffs of the possibility of recovering back pay is reasonable. It results in no unfairness to any member of the class.

5. Relatively speaking, the percentage of objectors is fairly large. This could ordinarily militate against approval of the settlement. But that fact is minimized when the nature and quality of the objections is examined. Not a single one of the objectors complains that the settlement is unfair to *him.* The objections are of a general nature. For example, objectors are apprehensive that the oral board will be "arbitrary and capricious" and that defendants are likely to "repeat any and all acts of discrimination." Those fears have no basis in the record before me. Nor did objectors in the two hearings on this motion make any showing that such was likely to be the case. Under the proposed decree, this Court is open for relief if the city does not perform its duties under the decree. The suggestion that it review all proposed promotions prior to granting same in order to determine whether there is anything wrong with them is patently absurd.

Objectors' request that a freeze be placed on white promotions until the number of black ranking officers reaches 40%. This is in effect a request for quota promotion. Such is an extreme form of equitable remedy. Its use poses grave constitutional questions. See *Board of Regents v. Bakke* (United States Supreme Court No. 76–811).[4] Such a remedy is warranted, if ever, only in a case in which egregiously discriminatory practices are continuing. The present record reflects no actions on the part of defendants since July 25, 1971, warranting the imposition of quotas.

6. No attorneys' fees are provided for in the proposed settlement. That matter is reserved by the Court for future determination. The question of attorneys' fees played no part in the settlement and has no bearing on whether the latter should be approved.

The proponents of the proposed settlement have carried their burden of showing that it is fair, adequate , and reasonable. They have shown that the settlement was reached after arm's length negotiation; that their counsel are experienced in similar cases; that there has been sufficient discovery to enable counsel to act intelligently, and that the relative interests of the objecting parties is small. *Feder v. Harrington,* 58 F.R.D. 171 (S.D., N.Y.).

3. These guidelines were never adopted by the Justice Department, the Labor Department or by the Civil Service Commission. All of those agencies held them too harsh. Only in the last few weeks have all four agencies been able to agree on a uniform set of Guidelines. See Fair Employment Practices Manual 401: 211, 2525.

4. A district court has recently held that a city police department's voluntary affirmative action plan that set a quota for promotion of black officers discriminates on basis of race in violation of Title VII and the Equal Protection Clause. *Detroit Police Officers Association v. Young* (E.D., Mich.), 446 F.Supp. 979.

The objectors have made no convincing showing to the contrary. The record in the case, including exhibits, transcripts and other documents, is a very extensive one. An evidentiary hearing on the issue before this Court is unnecessary.

### IV

### ORDER

IT IS ORDERED that the consent decree be approved and that it be incorporated herewith and made a part of this Opinion and Order.

ORDERED further that on or before April 10, 1978, counsel for plaintiffs shall submit a memorandum on the question of their entitlement to attorneys' fees.