**Lynn ARGO et al., etc., Plaintiffs,**

**v.**

**Patricia HARRIS, Individually and as Secretary of Housing and Urban Development of the United States, et al., Defendants.**

**No. 76 C 1969.**

United States District Court,
E. D. New York.

Nov. 29, 1979.

---

Rosenstein & Kahn, New York City (original counsel), Freedman, Oziel, Brett & Rotter, New York City (Substituted counsel) by Errol A. Brett, New York City, for plaintiffs.

Squadron, Ellenoff & Plesent, New York City, for Landlord.

Edward R. Korman, U.S. Atty., E.D.N.Y. Brooklyn, N.Y., for HUD.

Ellis S. Franke, New York City, for CAB.

Allen G. Schwartz, Corp. Counsel, New York City, for HDA.

## OPINION and ORDER

PLATT, District Judge.

By order to show cause with an affidavit and exhibits annexed, the defendants Morris Sosnow, Kate Sosnow, Leonard R. Schwartz, Jerrold A. Lieberman, Bernice Lieberman and Lorraine S. Sanford, d/b/a Birchwood Towers #1 Associates and Birchwood Towers #2 Associates (the "Landlord") move pursuant to Rule 23 of the Federal Rules of Civil Procedure for an order approving the settlement of this action in accordance with a stipulation of settlement dated July 18, 1979.

A hearing on the motion was held by this Court on October 5, 1979 at which time a number of persons made statements on behalf of and against the proposed settlement and during which the Court asked various persons to serve and file statements of their objections to the fairness and reasonableness of the proposed settlement. In response to such request, the Court has received an affidavit of Errol A. Brett, sworn to October 12, 1979, who is a member of the firm of Freedman, Oziel, Brett & Rotter, attorneys for the Birchwood Towers Tenants Association, letters from Mr. Alexander Burman dated October 7 and 22, 1979, and a letter from Hyman Maron, Esq., dated October 20, 1979, in opposition to or containing suggestions with respect to modifying the proposed settlement, and an affidavit of Neal M. Goldman, a member of the firm of Squadron, Ellenoff, Plesent & Lehrer, attorneys for the landlord sworn to October 18, 1979, and an affirmation of Marc Kahn, a member of the firm of Rosenstein & Kahn, attorneys for the class action plaintiffs herein sworn to October 17, 1979 in support of the proposed settlement.

The sole question before this Court is whether the proposed settlement is fair,

reasonable and adequate. *Feder v. Harrington*, 58 F.R.D. 171 (S.D.N.Y.1972). If it is, the Court should approve the same; if it is not, the Court should disapprove the settlement and the parties should be restored to their respective positions prior to the settlement. It is not this Court's function "to reopen and enter into negotiations with the litigants in the hope of improving the terms of the settlement to meet their respective objections; nor is it called upon to substitute its business judgment for that of the parties who worked out the settlement." *Levin v. Mississippi River Corporation*, 59 F.R.D. 353, 361 (S.D.N.Y.1973), *aff'd on opinion below sub nom. Wesson v. Mississippi River Corporation*, 486 F.2d 1398 (2d Cir. 1973), *cert. denied*, 414 U.S. 1112, 94 S.Ct. 843, 38 L.Ed.2d 739 (1973); *Blank v. Talley Industries, Inc.*, 64 F.R.D. 125, 129 (S.D.N.Y.1974).

## HISTORY OF THE ACTION

On October 19, 1976, Lynn Argo, Arnold Argo, Helen Dennis, Jay Grossman, Judy Swede, individually and as Directors of Birchwood Towers Tenants Association, Inc. ("BTTA") Max Wulfson and Dora Friedman, individually, and BTTA (the "Plaintiffs"), commenced this action against Carla Hills (for whom Patricia C. Harris has been substituted), individually and as Secretary of the federal department of Housing and Urban Development ("HUD"), the Landlord, and the Conciliation and Appeals Board ("CAB") and The Housing and Development Administration of the City of New York (now called the Department of Housing Preservation and Development) ("HPD"), as defendants seeking, *inter alia*, injunctive and declaratory relief with respect to a regulation promulgated by HUD providing for preemption by HUD of local regulation of rents in projects whose mortgages are insured by HUD and HUD's subsequent application of that regulation to Birchwood Towers.

In an opinion dated January 13, 1977, this Court held that the HUD preemption regulation "was consistent with statutory authority and was a necessary and reasonable means of carrying out that authority" and that if HUD, after fulfilling certain due process requirements validly preempts the local rent control laws, the Landlord may lawfully pass on any HUD authorized increases to tenants with existing leases. *Argo v. Hills*, 425 F.Supp. 151, 154–55 (E.D. N.Y.1977). The due process requirements were that HUD must give the tenants of Birchwood Towers an opportunity to inspect the Landlord's application and to submit reasons why HUD should not preempt local rent regulations after which HUD must consider such submissions and deliver a written decision stating its reason why preemption was or was not necessary.

This Court also held that this action should proceed as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, that the Plaintiffs should be the class representatives and that the firm of Rosenstein and Kahn, Esqs., should be the attorneys for the class action plaintiffs.

Thereafter, the Landlord served an application for preemption upon the plaintiffs who in turn submitted their comments to HUD which considered same in a written determination dated October 11, 1977 reaffirming its prior preemption decision. Based on this determination this Court entered a preliminary injunction dated November 25, 1977, which was affirmed by the United States Court of Appeals on March 15, 1978. *Argo v. Hills*, 578 F.2d 1366 (2d Cir. 1978). On January 17, 1979, a final judgment was entered sustaining the validity of HUD's regulation and the application of that regulation to preemption of rents at Birchwood Towers, approving the collection of HUD jeopardy rents, enjoining Plaintiffs, CAB and HPD from refusing to pay or interfering with the collection of HUD rents and from enforcing the Rent Stabilization Law and Code against the Landlord. The judgment also dismissed Plaintiffs' complaint and awarded the Landlord certain costs and disbursements and gave the tenants who were members of the class an opportunity to vacate the premises on sixty (60) days written notice. HPD and the Plaintiffs appealed and while the appeals

were pending the Landlord sought additional increases in the HUD rentals. At this juncture the parties apparently determined that a negotiated settlement might be the best way to resolve the disputes between them and accordingly, in the latter part of April of this year, the attorneys for the parties, in a two day session, negotiated the essential terms of the proposed settlement. Thereafter, the attorneys wrote and revised a number of drafts embodying this settlement and after five months reached an agreement on the written settlement agreement submitted to this Court for approval.

In essence, the stipulation provides that:

(i) Birchwood Towers will be returned to the jurisdiction of CAB as of May 1, 1979 at base rents equal to the highest of the Rent Stabilization Law ("RSL") or HUD rents payable by the tenants (including any portion paid into escrow) on May 1, 1979 increased by five (5%) per cent (the "Base Rents");

(ii) HUD preemption will be terminated and the Landlord will not seek and HUD will not process any application for any further preemption order for a period of three (3) years;

(iii) Senior citizens holding exemption orders shall promptly receive increased exemption orders in accordance with the terms of the statute and senior citizens who qualify for such orders but whose applications have been held up pending resolution of this case shall also receive exemption orders in accordance with the terms of the statute;

(iv) All renewal and vacancy leases effective after May 1, 1979 will be governed by applicable RSL rules and shall be for rentals equal to the Base Rent increased by the applicable RSL guidelines, provided, however, that for renewal leases for terms commencing prior to September 1, 1979, collection of guidelines increases in excess of the Base Rent will be waived for the months of May, June, July and August, 1979;

(v) Any leases made after January 1, 1979 for rentals in excess of the HUD Rent or RSL Rent shall be amended to provide for the HUD Rent/RSL Rent for the period prior to May 1, and the Base Rent thereafter and any excess shall be credited;

(vi) The monies paid into escrow through April 30, 1979 by tenants whose RSL rents exceeded their HUD rents will be returned to such tenants with interest but less a proportionate share of a reasonable fee to Rosenstein & Kahn, Esqs., the plaintiffs' attorneys, to be fixed by the Court for their services as escrow agents (the plaintiffs' attorneys to apply for a fee of $3,500.00), and any such escrow amounts paid after April 30, 1979 will be paid over to the Landlord without interest;

(vii) Until two months after the effective date of the settlement, the Landlord will not commence any non-payment summary proceedings against any tenant who pays at least that rent he or she was obliged to pay on May 1, 1979; and

(viii) The Landlord's Offering to Convert To Cooperative Ownership shall include a provision extending the exclusive right of the tenants in occupancy to purchase their apartments from ninety (90) days after presentation of the Offering Plan to the tenants to one hundred eighty (180) days after such presentation.

## DISCUSSION

The proposed settlement has been agreed to by the attorneys for all of the parties herein and was approved by the Board of Directors of BTTA. Normally, there is a public policy favoring settlement. *Feder v. Harrington, supra.*

During the settlement negotiations the tenants' representatives repeatedly stressed that their major concern was for a return to CAB regulations under which they believed that they had greater rights to participate in rent decisions than those available under HUD jurisdiction, and under which they believed they had available safeguards in the event the Landlord proceeded with his proposed conversion of the premises to "cooperative apartments". The Landlord agreed to the tenants' demands in this respect.

With respect to the proposed rent increase, the Landlord said it was legitimately entitled to far more than it ultimately received and, in addition, that it conceded an extremely valuable right to the tenants by agreeing to double the time in which they have an exclusive option to purchase their apartments from the 90 days accorded by statute to 180 days.

Various figures have been submitted to this Court by Mr. Burman and others in an effort to show that the proposed rent increases are excessive but the Court finds it difficult to accept this proposition. As the Landlord points out, the record shows that the HUD rent roll as of November 1, 1976 was $301,607 per month. If that rent roll had been increased between December 1, 1976 and May 1, 1979 by the applicable Rent Stabilization Guideline increases, (using Mr. Burman's average of 12%) the rental would have risen to $337,799 per month on May 1, 1979, or an increase after 3 years of 10.6% at the rate of 3.5% per annum. In this day and age of (annual) double digit inflation this is scarcely an excessive increase.

It seems clear to the Court that the risks facing the tenants in the event that this Court were to disapprove the proposed settlement are enormous. Assuming that this Court's decision of January 13, 1977 is upheld on appeal, the Landlord might well prevail upon HUD to grant increases in the neighborhood of 10% per annum for this and ensuing years. Under the proposed settlement agreement, the tenants will be called upon to sustain a much smaller rent increase over a three year period.

On behalf of the BTTA, Mr. Brent expressed certain concerns of his new clients, viz: (i) that the proposed settlement applies more harshly to tenants who moved into the project since the Fall of 1978; (ii) that the collection of a 5% rent increase has been implemented on the basis of a stipulation which has not been approved by the Court; and (iii) that the time provided for tenants to preserve their rights during the proposed co-op conversion is insufficient.

The first of such objections was apparently the subject of bargaining between Mr. Brent and the Landlord and a compromise was made pursuant to which the Landlord agreed to waive collection for four months of any increase in the settlement rents tenants renewing on or after May 1, 1979.

With respect to the collection of the settlement increase prior to Court approval of the settlement, here again this was subject to bargaining between the parties and the early collection date was agreed upon.

Finally, under New York law, tenants are granted an exclusive option to purchase their apartment within 90 days of the submission of co-op conversion plans. This time period was also the subject of negotiations pursuant to which the tenants were granted an additional 90 days.

In addition to the foregoing objections and comments, Mr. Maron seeks additional provisions which would require accountings by the escrow agents and payments of excess rents directly by the escrow agents to the tenants. Mr. Maron should work with other counsel on a mutually acceptable order in this respect. For present purposes, this Court is not inclined to determine that the proposed settlement is unfair or unreasonable because it fails to accommodate each possible individual claim of a tenant against the escrow agents or the Landlord.

In short, after a review of the various submissions made by the various parties and others with respect to the proposed settlement, the Court is satisfied that the settlement was negotiated in good faith, at arms-length, and with the advice of competent counsel on behalf of all of the parties and the same is fair and reasonable to all concerned herein.

SO ORDERED.