Harold BARNETT, Plaintiff,

v.

Jay A. PRITZKER et al., Defendants.

William SHLENSKY, Plaintiff,

v.

CERRO CORPORATION et
al., Defendants.

Miriam L. RABINOWITZ, Plaintiff,

v.

Jay A. PRITZKER et al., Defendants.

Nos. 76 Civ. 2035 (LFM), 76 Civ. 960
(LFM), 75 Civ. 1795 (LFM), 75 Civ. 1910
(LFM), 75 Civ. 2037 (LFM), and 75 Civ.
2238 (LFM).

United States District Court,
S. D. New York.

Jan. 12, 1977.

Kreindler & Kreindler, New York City, for plaintiffs by Paul M. Bernstein, Ronald Litowitz and Edward A. Grossman, New York City.

Lefrak, Fischer & Myerson, New York City, for objectors James Hervey Johnson and Brian Gregory by Edward R. Mandell and Gerald D. Fischer, New York City.

## OPINION

MacMAHON, District Judge.

In our order of December 29, 1976, we approved the settlement of these derivative and class actions, pursuant to Rules 23(e) and 23.1, Fed.R.Civ.P. We now consider counsel's applications for an award of attorneys' fees and disbursements.

■ It is clear in this and other circuits that the proper starting point for an award of counsel fees is the actual time spent by attorneys, multiplied by a reasonable hourly rate to which attorneys of like skill in the area would typically be entitled for a given type of work. See, *e. g., City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 471 (2d Cir. 1974); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973). With this in mind, we have examined the detailed affidavits of counsel, in which they have indicated their time spent on the various categories of activity.

Although the hourly rates awarded are somewhat lower than most of the rates suggested by counsel, and although the "risk factor bonus" is considerably lower than the multiple suggested by counsel of three times the basic award, we do not mean to impugn the integrity or competence of plaintiffs' counsel. Indeed, we take this opportunity to express our appreciation for what we consider highly professional, quality representation by counsel for *all* parties, who in this age of seemingly interminable litigation cooperated fully with the court and with each other in bringing these actions to a relatively speedy resolution.

■ Nevertheless, while the *Lindy* and *Grinnell* courts did recognize the need to increase basic hourly fees on account of the contingent nature of litigation, those courts also explicitly reminded us of the duty of courts to fix fees with an eye to moderation and to avoid even the appearance of awarding "windfall" fees. This policy is clearly reflected in the recent trend away from awarding fees based on the "contingent fee syndrome," *Grinnell, supra*, 495 F.2d at 468, and is directed at alleviating criticism of the legal community because of the appearance, all too often justified, that attorneys in class actions "have reaped a golden harvest of fees." *Free World Foreign Cars, Inc. v. Alfa Romeo, S.p.A.*, 55 F.R.D. 26, 30 (S.D.N.Y.1972); see also *Illinois v. Harper & Row Publishers, Inc.*, 55 F.R.D. 221, 224 (N.D.Ill.1972); Graham, Guest Opinion on

Legal Fees: Fluffing the Golden Fleece, Juris Doctor 10, 11 (February 1973).

Moreover, the allowance of counsel fees in a class or derivative action is rooted in the equitable principle that those who are entitled to share in a common fund or benefit, created by litigation instituted and prosecuted by others, should bear a portion of the expenses of the litigation, including counsel fees, by charging the fund. *Trustees v. Greenough*, 105 U.S. 527, 26 L.Ed. 1157 (1881); *City of Detroit v. Grinnell Corp., supra*, 495 F.2d at 469 and cases there cited. Application for such an allowance, however, is addressed to the sound discretion of the court, to be exercised as equity and justice require and with fairness, moderation and jealous regard for the protection of the interest of the absent members of the class or group who are not in a position to fend for themselves in negotiating a counsel fee. *Trustees v. Greenough, supra* ; § 1.47 Manual for Complex Litigation, reprinted at 1 Pt. 2 J. Moore, Federal Practice 62–64 (1975).

We are mindful that defendant GL Corporation has agreed to pay counsel fees in the class actions in such fair and reasonable amount as determined by the court and that, therefore, our award of fees will not directly reduce the settlement fund. The parties here have wisely left determination of the amount of the fees to the court, thereby invoking the exercise of our discretionary powers to make such an award as equity and justice require, applying the same standards as if the fees were to be paid from the fund. While, in our view, any arrangement by a defendant in a class or derivative action to pay plaintiffs' attorneys' fees in a definite amount would present the potential for a collusive settlement, the arrangement here is saved from the cloud of collusion by full disclosure of all the facts and a provision for court determination of the amount to be paid.

In light of these considerations and our own awareness of typical fees for skilled attorneys in this district, we have determined that the hourly rates set forth in the appended tables are fair, reasonable and adequate under all the circumstances.

*Adjustments to Hours Requested*

■ Although we will consider separately the applications as they pertain to the class actions and the derivative actions respectively, we must first determine the appropriate allocation of the time of Kreindler & Kreindler, lead counsel on all the consolidated actions. They have submitted a single affidavit outlining their hours spent and suggested hourly rates, but they are unable to allocate their time between the class actions and derivative actions because of the coordinated and largely coextensive and overlapping nature of the discovery and trial preparation in the two groups of actions.

We find that an allocation based on the respective recoveries is appropriate. The $750,000 recovered on the derivative settlement represents approximately 20% of the total recovery of approximately $3,750,000 in all the actions ($750,000 on the derivative actions plus approximately $3,000,000 on the class actions). Accordingly, we have applied 20% of Kreindler & Kreindler's time to the derivative actions and 80% to the class actions.

We have accepted as reasonable the number of hours claimed for the various categories of activity, except for three items:

■ First, time spent by paralegals must be excluded because, however helpful, paralegals are not members of the bar. *In re Hardwick & Magee Co.*, 355 F.Supp. 58, 73 (E.D.Pa.1973); *Trans World Airlines, Inc. v. Hughes*, 312 F.Supp. 478, 482 (S.D.N.Y. 1970). Law firms employing paralegals, however, "must be reimbursed for their wages, even though their time cannot be considered as input in the fee award determination." *Grinnell, supra*, 495 F.2d at 473. Accordingly, we have excluded paralegal time from the calculation of attorneys' time and have added the cost of paralegals as an allowable expense item.

■ Second, we have reduced the time claimed on the combined application of Milberg & Weiss and Gene Mesh Co., L.P.A.

for preparation of their fee application. We find their claim of 40 hours for this work excessive in view of their total of only 276.5 hours for other activities. We note that Kreindler & Kreindler claimed 36.5 hours to prepare this combined application, including 2169.5 of their own hours for other work. Other firms have not included time for preparation of fee applications at all. We will allow 15 hours to Milberg & Weiss and Gene Mesh Co., L.P.A. for preparation of their fee application. Mesh claimed 23.5 of the original 40 hours claimed, or approximately 60%, and Milberg claimed 16.5 hours, or approximately 40%. Applying these percentages to our allowance of 15 hours, 9 hours are allocable to Mesh and 6 hours to Milberg.

Third, we have similarly reduced to 10 hours the time claimed by Garwin & Bronzaft for preparation of their fee application.

█ We wish to point out additionally that a factor in our reduction of the hourly rates requested is our conclusion that excessive time was logged by partners, at a high rate of compensation, where we feel that associates could have performed considerably more of the discovery and other preparatory work, under the supervision of a partner, at less cost to the classes and shareholders.

### Increase of Fee Award

After a dollar figure for straight billable time is established, the court may increase or decrease the fee award by introducing into the calculus other, less objective, factors, primarily the attorneys' "risk of litigation." *Grinnell, supra,* 495 F.2d at 471.

█ The courts in *Grinnell* and *Lindy, supra,* recognized that a fee award computed strictly on a billable hours basis may not necessarily represent a "just and adequate" fee, particularly where the litigation is of a contingent nature. Under the rationale of those decisions, the district court may increase the basic hourly fee by taking into account those tangible and intangible factors comprising the "risk of litigation."

However, as the Second Circuit suggested in *Grinnell, supra* : "The greater the probability of success, of either ultimate victory on the merits *or of settlement,* the less this consideration should serve to amplify the basic hourly fee." 495 F.2d at 471 (emphasis added).

█ In this case, we have indicated in our memorandum approving the settlement terms that plaintiffs were facing sufficient doubt about ultimate success to warrant settling their claims short of a plenary trial, for an amount less than they might have recovered if they had proven liability of the defendants. Similarly, however, the defendants were faced with considerable uncertainty in proceeding to trial and, therefore, negotiated a settlement of the cases rather than risk an adverse verdict.

While we have indicated the existence of some doubt about the ultimate success of plaintiffs' claims, we feel that the seriousness of the allegations, existence of some evidence casting doubt on the likelihood of a successful defense, and the consequent exposure of the defendants to liability indicate that there was a high probability of plaintiffs obtaining a favorable settlement of these actions. We do not mean to suggest by this that the settlement was obtained without extensive negotiations by competent counsel, but we do feel that the "risk of litigation" here was pervasive on both sides, and this factor contributed to the likelihood that a settlement could be reached prior to trial.

In addition, we have considered numerous other factors traditionally taken into account in fee award determinations, including the standing of counsel at the bar, the magnitude, novelty and complexity of the litigation, the responsibility undertaken by counsel, and our own knowledge of the work performed by plaintiffs' counsel in presenting their cases at conferences, arguments, and throughout the pre-trial proceedings.

The *Lindy* and *Grinnell* decisions have come a long way toward guiding district courts through the fee award process, which had previously proved to be a "conceptual

434

amalgam . . . so extensive and ponderous that it is probably not employed in any precise way by those courts espousing adherence to it." *Grinnell, supra,* 495 F.2d at 470. After consideration of the "litigation risk factor," which the Second Circuit felt "might well be translated into mathematical terms," *Id.* at 471, courts have awarded "incentive bonuses" or "risk factor bonuses" ranging from 10%, see, *e. g., Kiser v. Miller,* 364 F.Supp. 1311 (D.D.C.1973), to 200%, see *City of Detroit v. Grinnell Corp.,* Docket No. 68 Civ. 4026 (S.D.N.Y. Apr. 21, 1976). On remand from the Third Circuit, the district court in *Lindy* a complex group of antitrust cases, awarded a 100% bonus. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 382 F.Supp. 999 (E.D.Pa.1974). At least one court has awarded *various* bonuses depending on the category of work involved, *i. e.,* research, discovery, settlement negotiations, etc., an approach we decline to perpetuate. See *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,* 410 F.Supp. 669 (D.Minn.1974).

However, in spite of the lack of uniformity or even readily articulable standards among the district courts in determining the litigation risk factor, it is, nevertheless, incumbent on this court to do so. Taking all of the above factors into consideration,

we conclude that the basic fee should be increased by 33%. We have applied this "risk factor bonus" to the total of all time spent on the merits of the cases through the conclusion of the hearings on the settlement terms and fee applications on May 26, 1976. We have allowed only the straight hourly rate for preparation of the fee applications and administration of the settlement, since there is no further "risk of litigation." *Lindy, supra,* 382 at 1023.

In accordance with the foregoing discussion, and on the basis of the calculations set forth in the appended tables, which represent our allowance of compensable time, our determination of reasonable hourly rates for such time, our allowance of compensable disbursements and expenses, and our calculation of the totals, including the "risk factor bonus," we approve as fair, reasonable and adequate:

(a) the total award of $285,615 for fees and disbursements on the class actions, to be paid by the defendant GL Corporation; and

(b) the total award of $116,887 for fees and disbursements on the derivative actions, to be deducted from the settlement fund.

Settle appropriate orders within ten (10) days.

## APPENDIX I *

### Class Action Fees

#### A. Fees Subject to "Risk Factor Bonus"

| | Hours | Rate | Total |
|---|---|---|---|
| 1. Kreindler & Kreindler (80% of total hours claimed for this category) -- | | | |
| Paul M. Bernstein, partner | 196 | $125 | $ 24,500 |
| Stanley J. Levy, partner | 12.8 | 125 | 1,600 |
| Ronald Litowitz, partner | 907.6 | 100 | 90,760 |
| Max W. Berger, associate | 98.8 | 75 | 7,410 |
| Edward A. Grossman, associate | 520.4 | 60 | 31,224 |

| | Hours | Rate | Total |
|---|---|---|---|

2. Milberg & Weiss and
 Gene Mesh Co., L.P.A. --

| | Hours | Rate | Total |
|---|---|---|---|
| Lawrence Milberg, partner | 88.75 | 125 | 11,094 |
| Melvyn I. Weiss, partner | 34.5 | 125 | 4,313 |
| Gene I. Mesh | 153.25 | 125 | 19,156 |

Total Fees Subject to "Risk Factor Bonus" = $190,057

---

\* Figures are rounded to the nearest dollar.

B. Fees Not Subject to "Risk Factor Bonus"

1. Kreindler & Kreindler
 (20% of total hours claimed
 for this category) --

| | | | |
|---|---|---|---|
| Bernstein | 1.3 | $125 | $ 163 |
| Litowitz | 3 | 100 | 300 |
| Grossman | 3 | 60 | 180 |

2. Garwin & Bronzaft --

| | | | |
|---|---|---|---|
| Bronzaft | 10 | 100 | 1,000 |

Total Fees Not Subject to "Risk Factor Bonus" = $1,643

C. Disbursements and Expenses

1. Kreindler & Kreindler --

 Disbursements $ 52

 Paralegal Assistant at Cost
 (20% of $880) 176

2. Kass, Goodkind, Wechsler & Gerstein 160

3. Weinstein & Levinson 85

4. Herbert I. Deutsch 192

5. Garwin & Bronzaft 482

 Total Disbursements and
 Expenses on Derivative Actions = $1,147

C. Disbursements and Expenses

1. Kreindler & Kreindler --

 Disbursements $13,167

■ ■

■

| | Hours | Rate | Total |
|---|---|---|---|
| Paralegal Assistant at Cost<br>(80% of $880) | | | 704 |

2. Milberg & Weiss and<br>Gene Mesh Co., L.P.A. --

| | | | *|
|---|---|---|---|
| Disbursements | | | 4,523 |

Total Disbursements and<br>Expenses on Class Actions = $18,394

D. **Totals on Class Actions**

| | |
|---|---|
| Fees Subject to "Risk Factor Bonus" | $190,057 |
| +33% "Risk Factor Bonus" | 62,719 |
| Fees Not Subject to "Risk Factor Bonus" | 14,445 |
| Disbursements and Expenses | 18,394 |

GRAND TOTAL OF FEES<br>AND DISBURSEMENTS<br>ON CLASS ACTIONS = $285,615

---

\* The Milberg affidavit claimed $180 less than this amount, apparently because of a clerical error in transcribing the invoiced fee of Dr. Melnyk.

## APPENDIX II *

### Derivative Action Fees

A. **Fees Subject to "Risk Factor Bonus"**

| | Hours | Rate | Total |
|---|---|---|---|
| 1. Kreindler & Kreindler<br>(20% of total hours claimed<br>for this category) -- | | | |
| Bernstein | 49 | $125 | $ 6,125 |
| Levy | 3.2 | 125 | 400 |
| Litowitz | 226.9 | 100 | 22,690 |
| Berger | 24.7 | 75 | 1,853 |
| Grossman | 130.1 | 60 | 7,806 |
| 2. Kass, Goodkind, Wechsler &<br>Gerstein -- | | | |
| Stuart D. Wechsler, partner | 53.5 | 125 | 6,688 |
| Samuel K. Rosen, associate | 46 | 75 | 3,450 |
| Patricia A. Donlevy, associate | 8.5 | 50 | 425 |

| | Hours | Rate | Total |
|---|---|---|---|
| 3. Weinstein & Levinson -- | | | |
| Frank Weinstein, partner | 46 | 125 | 5,750 |
| Samuel Weinstein, partner | 20 | 125 | 2,500 |
| 4. Herbert I. Deutsch -- | 86.25 | 75 | 6,469 |
| 5. Garwin & Bronzaft -- | | | |
| Sidney L. Garwin, partner | 29.25 | 125 | 3,656 |
| Bertram Bronzaft, partner | 179.75 | 100 | 17,975 |

Total Fees Subject to "Risk Factor Bonus" = $85,787

*

Figures are rounded to the nearest dollar.

B. Fees Not Subject to "Risk Factor Bonus"

1. Kreindler & Kreindler
(80% of total hours claimed
for this category) --

a. Fee Application

| | Hours | Rate | Total |
|---|---|---|---|
| Bernstein | 5.2 | $125 | $ 650 |
| Litowitz | 12 | 100 | 1,200 |
| Grossman | 12 | 60 | 720 |

b. Settlement Administration

| Estimated 200 hours at $50 per hour (majority of time associates and paralegals) | 10,000 |
|---|---|

2. Milberg & Weiss and
Gene Mesh Co., L.P.A. --

a. Fee Application

| | Hours | Rate | Total |
|---|---|---|---|
| Milberg | 6 | 125 | 750 |
| Mesh | 9 | 125 | 1,125 |

Total Fees Not Subject to "Risk Factor Bonus" = $14,445

D. Totals on Derivative Actions

Fees Subject to "Risk Factor Bonus" $ 85,787

D. <u>Totals on Derivative Actions</u>—Continued

| | Hours | Rate | Total |
|---|---|---|---|
| +33% "Risk Factor Bonus" | | | 28,310 |
| Fees Not Subject to "Risk Factor Bonus" | | | 1,643 |
| Disbursements and Expenses | | | 1,147 |

GRAND TOTAL OF FEES
AND DISBURSEMENTS ON
DERIVATIVE ACTIONS = <u>$116,887</u>