Annette L. FRANKENSTEIN, as Executrix under the Last Will and Testament of David B. Frankenstein

v.

McCRORY CORPORATION et al.

Myers L. GIRSH et al.

v.

LERNER STORES CORPORATION et al.

Nos. 74 Civ. 727, 73 Civ. 5373.

United States District Court, S. D. New York.

Jan. 24, 1977.

Richard B. Dannenberg, Lipper, Lowey & Dannenberg, New York City, for plaintiff Frankenstein and Lead Counsel.

Irving Bizar, Demov, Morris, Levin & Shein, New York City, for plaintiffs Girsh and others.

William Bernstein, Bernstein Hawkins & Katcher, New York City, for Class Member Herman Gross.

PIERCE, District Judge.

## MEMORANDUM AND ORDER

Counsel for plaintiffs in these consolidated securities class actions petition the Court for an award of fees and disbursements in an amount totalling $553,896.75, to be paid from the Settlement Fund. For the reasons that follow, the application is granted in the amount of $495,615.00.

These actions were commenced following the 1973 merger of defendant Lerner Stores Corporation into defendant McCrory Corporation. The complaints alleged that the registration statement and the prospectus published in connection with the issuance of McCrory 7¾% debentures, and the proxy materials employed to achieve consummation of the merger, were false and misleading for their failure to disclose, inter alia, significant increased operating costs in the operation of S. Klein Stores, an anticipated $11,900,000 loss to McCrory due to S. Klein's financial status, plans of certain McCrory directors and officers to increase the percentage control of McCrory held by defendant Rapid American Corp., and certain alleged conflicts of interest between directors of Rapid American and McCrory.

In sum, the complaints alleged violations of Section 14(a) of the Securities Exchange Act and Rule 14(a)-9 thereunder with respect to the proxy materials, of Section 11 of the Securities Act of 1933 with respect to the issuance of the McCrory debentures, and of Section 10(b) of the Securities Exchange Act and Rule 10b-5 thereunder with respect to the exchange of Lerner common stock for the new McCrory debentures, which exchange effected the merger attacked by the actions. The gravamen of the complaints was the claim that the terms of the merger were highly disadvantageous to the Lerner shareholders and to the holders of Lerner warrants. Plaintiffs also claimed violations of various fiduciary duties, including the fiduciary duty of McCrory as a holder (prior to the merger) of a majority of Lerner shares. Finally, the plaintiffs alleged that holders of Lerner warrants were not informed that they could obtain shareholder appraisal by exercising their warrants to purchase Lerner common and then filing appropriate objections to the merger.

In the years following the commencement of the actions, the two cases underwent extensive litigation before the undersigned and before Judge Owen of this Court. As revealed by lead counsel's "Affidavit re Document Discovery" (Ex. 4 to the Petition), this litigation generated many thousands of documents, and the papers submitted on the settlement and on this application are no exception. Well over a year prior to the final submission of the settlement, lead counsel for plaintiffs, Richard Dannenberg, commenced extensive settlement discussions which resulted not only in the settlement approved by the Court, but also contributed significantly to a market purchase by defendant Rapid American in 1975 of some $37,715,000 in principal amount of 7¾% McCrory debentures, at a cost to Rapid American of some $18,860,000.

As submitted and certified by the Court on a preliminary basis prior to the consummation of the settlement, the class included all persons except defendants who acquired McCrory 7¾% debentures on or before September 18, 1974 (one year after the date of the merger exchange offer) and all persons who owned Lerner common or warrants on or after April 11, 1973 (the date of the announcement of the merger) and on or before September 18, 1973 (the date of the merger exchange offer).

The overall class was divided into two sub-classes. Sub-class One included all persons who were members of the class and who acquired McCrory debentures, in exchange for Lerner securities or otherwise, on or before September 18, 1974. Sub-class Two included all class members who owned Lerner securities at any time between April 11, 1973 and September 18, 1973, and who did not exchange those securities for 7¾% McCrory debentures on or before September 18, 1974. Thus, the class included all offerees of the exchange offers and the sub-classes are divided into those who acquired McCrory securities, and those who did not.

On November 28, 1975, the Court ordered the *Frankenstein* and the *Girsh* actions consolidated for purposes of considering this settlement. That order provided that the parties would undertake to ascertain identification of putative class members, and the parties did so, identifying approximately 18,000 class members. By stipulation filed

January 29, 1976, the parties hereto agreed to a settlement of the actions.

Pursuant to an order dated February 26, 1976, the class was informed of a hearing scheduled May 18, 1976 to consider the proposed settlement. Pursuant to that order, on May 8, 1976, counsel for Herman Gross, one member of the class, filed objections to the settlement, arguing essentially that the structure of the settlement, and particularly the 1975 Rapid American "buying program" operated to favor the class members who held their debentures until late 1975, and that the settlement did not give equal benefit to those class members, such as the objector, who sold their holdings prior to the Rapid American buying program.

After careful consideration of the objections to the settlement, the Court overruled the exceptions at the hearing on May 18, 1976. In brief, the Court ruled that the settlement was quite substantial in amount, and that there was no requirement that all members of the class be treated with mathematical symmetry.

The settlement which was approved included the following items: (1) the reduction in the total amount of class claims produced by the Rapid American buying program; (2) the contribution by McCrory of some $3,550,000 in face amount of 7¾% debentures, or cash, or any combination thereof, to a settlement fund; and (3) $600,000 in cash for expenses and fees.

After the Court approved the settlement in May 1976, the objector took an appeal which was later withdrawn. There were no other objectors to the settlement and not more than thirty-five persons among the 18,000 class members elected to exclude themselves from the settlement.

It is not possible to place an exact dollar figure on the value of the settlement. First, the major portion of the settlement fund is comprised of marketable securities; while the market value on the date of the approval of the settlement totalled 2.1 million dollars, that figure is subject to change with the fluctuation of the market. More difficult is the question of the extent to which the 1975 Rapid American "buying program", through the urging of plaintiff's counsel directed towards buying back debentures held by class members, operated to benefit the class. The buying program cost Rapid American over eighteen million dollars. By buying back from the class and others some thirty-seven million dollars in principal amount of McCrory debentures, Rapid American's program substantially decreased the size of the class claims. Further, plaintiffs contend that by buying so large a block at the prices involved, Rapid American benefitted the class through supporting the market price of the debentures. However, the extent of this benefit to the class cannot be calculated with exactness.

Finally, the two other portions of the settlement are more capable of exact calculation. The settlement fund contains $600,000 in cash, and defendant McCrory must pay to the class annual interest on the new issuance of debentures in the amount of $275,125.00.

If the effect of the buying program is excluded altogether, the market value of the settlement at the time of its approval was approximately 2.7 million dollars (debentures worth 2.1 million plus $600,000 cash). On the other hand, when the effect of the buying program is considered, the value of the settlement is much greater.

Plaintiff's expert rendered the opinion that the market in McCrory 7¾% debentures rose 7¼ points as the result of the buying program. It is plaintiffs' contention, based upon the likely number of class member sellers involved in the buying program, that the dollar value of the program ranged from two to three million dollars. Thus, if the settlement is valued at its likely maximum, the total benefit to the class ranges from 4.7 to 5.7 million dollars. (Tr. 26–30) This estimate has not been challenged despite the presence of an objector to the settlement represented by competent counsel.

The exact value of the settlement was not a question which had to be determined on the application for approval, for it was clear that the amount was substantial re-

gardless of the calculation; further, the objections went to the manner in which the settlement benefitted certain class members more than others, and not to the size of the settlement package. However, one of the tests discussed within for the calculation of reasonable attorneys' fees is based upon a dollar valuation of the settlement fund. Since the opinion of plaintiffs' expert has not been challenged, the Court concludes, for the purpose of this application only, that the total value of the settlement is equal to 4.7 million dollars.[1]

It is on the basis of this record that counsel for the plaintiffs now seek an award of attorneys' fees in the total amount of $535,000.00 and expenses in the total amount of $18,896.75. The firm of Lipper, Lowey & Dannenberg, counsel for plaintiff in the *Frankenstein* action, and lead counsel in the negotiation, submission and administration of the settlement, seeks $465,000 in fees and itemizes $16,078.07 in expenses; $10,000 of the latter amount was with regard to the services of plaintiffs' financial expert, Corporate Capital Consultants, Inc., which firm at plaintiff's request analyzed and evaluated the Rapid American buying program. The firm of Demov, Morris, Levin & Shein, and their co-counsel for plaintiffs in the *Girsh* action, seek $50,000 in fees and $2,818.68 in expenses. Finally, the firm of Bernstein Hawkins & Katcher, counsel for the objecting class member, petitions for $20,000 in attorneys' fees.

These figures fall within the amounts which the notice to the class set forth as likely to be sought for fees and expenses. Despite the fact that the number of members of the class exceeds 18,000, and despite the presence at the settlement hearing of an objector to the settlement, no class member has objected to the size of the requested award for attorneys' fees.

The opinion of the Circuit Court in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448

(2d Cir. 1974) and the decision of the Third Circuit in *Lindy Brothers Builders v. American Radiator and Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973), indicate that the starting point in assessing a fee application by class action counsel is to multiply the number of hours spent by counsel in active litigation by a reasonable hourly rate for the time spent. Further, in certain circumstances, such as are presented here, courts do grant awards of fees in excess of the lawyers' normal billing rates. See, e. g., *City of Detroit v. Grinnell Corp.*, 1976 Reg. Rep. ¶ 60,913 (S.D.N.Y. April 21, 1976) (Metzner, J.); *Lindy Brothers Builders v. American Radiator and Sanitary Corp.*, 382 F.Supp. 999 (E.D.Pa.1974), *affirmed*, 540 F.2d 102 (3d Cir. 1976).

While the award of fees in excess of the billing rates has been approved by the Circuit Court in *Grinnell*, all awards must be measured by the test of reasonableness, and courts must avoid even the appearance of windfall fees. The "contingent fee syndrome" of earlier decisions has been disapproved, and courts strive to be careful in the calculation of what amount represents a reasonable award. See *Grinnell*, *supra*, 495 F.2d at 486; *Barnett v. Pritzker*, 73 F.R.D. 430 (S.D.N.Y.1977). Further, since the fee award in some respects operates to reduce the amount of benefit which might otherwise have accrued to class members, the courts bear a special responsibility to safeguard the interests of these absent plaintiffs.

The first step of the inquiry, to set a reasonable hourly rate for the efforts of counsel, is in this action simplified by the fact that the Court finds the hourly figures submitted by counsel to be reasonable in light of the difficulty of this action and the length of time during which the case was actively in litigation.

As required by *Grinnell*, counsel for the plaintiffs have presented documentation in-

---

1. The Court has given consideration to the possibility of obtaining a second opinion from a court-appointed expert. However, since even plaintiffs' expert was unable to present anything more precise than a range, it is unlikely that a more precise estimate could be obtained. Further, as noted, no party has disputed plaintiffs' valuation of the settlement, and the Court has valued the package at the low end of the range.

dicating that a total of nearly 3,500 hours was devoted to this matter by the three law firms involved, up to the point where the objector's appeal from the approval of the settlement was withdrawn.

Counsel for plaintiff Frankenstein expended 2,744.8 hours, of which 1,326.7 was billed by partners, 418.6 by associates, and 1,000 hours of accounting services rendered by David Berdon & Co., accountants retained by the Dannenberg firm during the course of the litigation. If these hours were billed at the firm's average rate for the period in question, the time expended by partners would be charged at approximately $125 per hour and total $165,837.00. The time billed by associates would have been charged at an average rate of $52.50 per hour and would total $21,976.50. The services of the accounting firm, most of which were devoted to discovery, would have been billed at approximately $100 per hour, totalling $100,000.00.

The Court finds the time expended to be adequately documented and concludes that it was a reasonable amount of time to devote to this complicated litigation. If the time had been billed to a client, the Dannenberg firm would have charged $187,813.50 for lawyers' services and $100,000.00 for accounting services.

Before Judge Owen of this Court, the Dannenberg firm undertook extensive discovery and motion practice, including an abortive attempt at injunctive relief, a motion for class action certification, discovery to identify the size of the class, and depositions of several officers of the corporate defendants and officers of accountants and institutional lenders associated with the defendants. In early April 1974, Judge Owen directed that the Rule 10b–5 counts of the *Frankenstein* action be set down for an immediate trial consolidated with other actions pending before that court; plaintiffs in these actions undertook expedited consolidated discovery in preparation for the May 20, 1974 trial date; however, business developments in the evolving relationships between the corporate defendants mooted many of the key trial issues; no trial was held and plaintiff instead filed an amended complaint and proceeded with discovery of the altered situation. As noted, the ensuing settlement discussions, including the negotiation with respect to the Rapid American buying program, consumed nearly a year; however, during this entire period the Dannenberg firm continued active discovery and the taking of depositions.

The time itemized by the Dannenberg firm does not include documentation for the preparation of the instant fee application or for the future administration of the settlement. However, the firm has been appointed Administrator of the settlement, and Mr. Dannenberg estimates that administration will consume some 500 hours of his firm's time. The Court finds this estimate to be reasonable, based upon the terms of the settlement agreement and of the series of consent orders of administration which have already been submitted to the Court, as well as the magnitude of the class and the complexity of the settlement itself. Since much of the administrative work will be accomplished by associates and paralegals, the Court considers it appropriate to make an award for these future efforts at an hourly rate of $50, which rate the Court finds to be reasonable. See *Barnett v. Pritzker, supra.* The Court will address within the question of a reasonable multiple or "litigation risk bonus" and to which items of the Dannenberg application such a multiple is properly applied.

The firm of Demov, Morris, Levin & Shein, counsel for plaintiff Girsh in the 73 Civ. 5373 action states that it has expended 165 hours in partners' time, which at the firm's average billing rate of $140 per hour would have been charged at $23,100.00. The firm also states that their co-counsel, two individual practitioners not members of their firm, worked on the *Girsh* case in the total amount of some 360 hours, which at their average rate of $75 per hour would have been charged at $27,000. The firm seeks an award of $50,000 for itself and on behalf of the *Girsh* co-counsel, slightly less than that which would have been billed at their normal rates.

The *Girsh* counsel do not seek any multiple; the hourly rates sought and the time expended are reasonable in light of the substantial activity which occurred in the *Girsh* action before the undersigned. Before *Girsh* was consolidated with *Frankenstein* for the purposes of this settlement, plaintiffs' counsel in 73 Civ. 5373 had served extensive interrogatories and requests for production, some even before the *Frankenstein* action was commenced. Further, the action saw more than its share of motion practice, including motions for class certification, for protective orders, and to dismiss. While counsel for plaintiff Frankenstein did negotiate the settlement, it is clear that the first-filed *Girsh* action broke much of the original ground in this litigation.

The third firm seeking a fee award is that of Bernstein Hawkins & Katcher, counsel for the objector Herman Gross. The objector's counsel state that they expended 178.7 hours in partners' time, which at the firm's normal billing rate of $125 per hour would have been charged at approximately $22,337.00; and 112.2 hours in senior associates' time, which at the firm's normal rate of $85 per hour would have been charged at $9,537.00. Thus, the firm would have charged a client some $31,874.00 for the services rendered in this action. The firm seeks an award of $20,000.00.

While the Court does not conclude that an objector to a class action settlement is properly awarded counsel fees in every case, where the objections filed produced a beneficial effect upon the progress of the litigation, an award of fees is appropriate. See *City of Detroit v. Grinnell Corp.*, 1976 Trade Reg:Rep. ¶ 60,913 at 68,983 (S.D.N.Y. 1976). In this action, the objector filed a formal Notice of Intention to Appear and to object to the structure of the settlement. The objections raised, although ultimately overruled, were not frivolous, and the presence of an objector represented by competent counsel transformed the settlement hearing into a truly adversary proceeding. The objections to the settlement caused this Court to spend even more hours in analyzing and assessing the complex settlement

agreement, and cast in sharp focus the question of the fairness and adequacy of the settlement to all the members of the class. Since the award sought is less than the figure which would be reached were the Court to exclude altogether the hours spent on the case by the senior associates of the firm, the Court concludes that the request for $20,000, which translates into approximately $69.00 per hour, constitutes a reasonable hourly rate and is an appropriate fee in this case.

### The Multiple

Only the Dannenberg firm here requests that a multiple be applied to its hourly rate and that it be awarded fees in excess of that rate. In this inquiry, the first question is whether such a multiple should be applied and to which items it is applicable.

The high caliber of the work performed by the Dannenberg firm and the magnitude of the benefit to the class militates in favor of the award of a multiple here. These private attorneys undertook to prosecute this large action against several substantial corporate defendants without the benefit of any prior investigation of the subject merger by the Securities and Exchange Commission, and without the benefit of any prior private action concerning the same events. Thus, plaintiffs' counsel began this action with a tabula rasa, and the result achieved was due in no small measure to their skill and dedication in prosecuting the action.

It is clear that Mr. Dannenberg took the laboring oar in this litigation early, that he vigorously prosecuted the action, and that he personally negotiated the 4.7 million dollar settlement which has been approved by the Court. These negotiations included the novel and beneficial idea of persuading defendant Rapid American to target its debenture "buying program" at the exact 7¾% debentures which were involved in this action, thus benefitting the class by those purchases and by the resultant increase in the market value.

Nor was this litigation without its attendant risks had the case gone to trial; at the hearing on the settlement, Mr. Dannenberg

noted that the class might well have had a difficult time of proving the materiality of the alleged non-disclosures, the existence of *scienter* on the part of the defendants, and, most significant, a causal relationship between the alleged securities laws violations and the decline in market value of the securities involved, which decline took place during an extremely unfavorable period in the market. Another factor which commends the settlement achieved is the vigorous and professional defense mounted by the *defendants'* law firms.

■ Court decisions have indicated that the greater the probability of plaintiffs' success on the merits at trial or by settlement, the less the fee award should include a multiple of the hourly rate. See *Grinnell, supra,* 495 F.2d at 471; *Barnett v. Pritzker, supra.* While this action, like many securities law class actions, did end in settlement, and while some resolution short of trial was perhaps likely, the Court concludes that the special efforts of these lawyers led to a settlement which was highly beneficial to the class. Indeed, in this Court's view, it was an imaginative and bold step by Mr. Dannenberg to seek to persuade Rapid American in effect to execute a major portion of the settlement through the buying program, with the attendant risk that this Court might later reject the buying program and disapprove the settlement which contained that item.

As recently noted by Judge MacMahon of this Court in *Barnett v. Pritzker, supra,* class action counsel have been awarded multiples of 1.1, 1.3, 2, and even 3 times the normal billing rate. See, e. g., *Lindy Brothers Builders, supra,* (E.D.Pa.1974); *Kiser v. Miller,* 364 F.Supp. 1311 (D.D.C.1973); see also *Gilman v. Mohawk Data Services,* 71 Civ. 4742 (S.D.N.Y. May 3, 1976); *Arenson v. Board of Trade,* 372 F.Supp. 1349 (N.D. Ill.1974).

■ Taking all the above factors into consideration, the Court concludes that the lawyers' time charged by the Dannenberg firm should be compensated in an amount 1.5 times the normal billing rate. However, the Court does not consider it appropriate to apply such a multiple to the services charged by plaintiff's accountant or to the future time which will be spent on the administration of the settlement since these items are not subject to the risks of litigation. Fees for these matters will be granted at the hourly rates involved. See *Barnett v. Pritzker, supra.* Indeed, accountant services and administration, while rendered by professionals, really fall more appropriately into the category of expenses.

Accordingly, the Court finds to be reasonable the following compensation for counsel for plaintiff Frankenstein:

| | |
|---|---|
| Attorneys' fees at reasonable hourly rates: | $187,813.00 |
| Plus risk of litigation multiple (50%): | 93,906.00 |
| Estimated fees for the administration of the settlement at a reasonable hourly rate: | 25,000.00 |
| Accounting services and fees: | 100,000.00 |

To these figures should be added $16,-078.00 in expenses. Of this amount, $10,000 was expended for the services of plaintiff's financial expert, who spent 80.5 hours in preparation of an important opinion with respect to the effect of the Rapid American buying program and its benefit to the class. The remainder of the Dannenberg expenses are for the normal disbursements associated with litigation, discovery and depositions, and the costs are itemized in Schedule A attached to the Dannenberg petition.

Accordingly, the Dannenberg firm will be awarded fees and disbursements in the total amount of $422,797.00.

As discussed hereinabove, the Court has found the hourly rates set forth by the Demov Morris firm and its *Girsh* co-counsel and by the Bernstein firm to be reasonable; these firms seek no multiple, and thus the $50,000 application by the former and the $20,000 application by the latter are approved. The application for reimbursement of expenses and disbursements incurred by the Demov Morris firm, itemized in Schedule I attached to their petition, is also approved in the amount of $2,818.00.

Accordingly, the fees and disbursements found to be appropriate by the Court total $495,615.00. This amount is equal to 10.5% of the 4.7 million dollar value of the settlement, even when the settlement is valued on the low side of the opinions presented. This amount is within or indeed below the range generally found to be fair and reasonable in such cases. See *Schlusselberg v. Keystone Custodian Funds, Inc.* [Current Binder] CCH Fed.Sec.L.Rep. ¶ 93,-901 (S.D.N.Y.1976); *Siegel v. Realty Equities Corporation of New York* [1973–74] CCH Fed.Sec.L.Rep. ¶ 94,102 (S.D.N.Y. 1973); see also *Rosenfeld v. Black*, 56 F.R.D. 604 (S.D.N.Y.1972) (Gurfein, J.).

Accordingly, the petitions of counsel for an award of fees, expenses and disbursements is hereby granted in the amounts set forth herein and in the annexed schedule. Lead counsel for plaintiffs is directed to submit an appropriate order in accordance herewith.

SO ORDERED.

### SCHEDULE

**Award to Lipper Lowey & Dannenberg**

| | |
|---|---|
| Attorneys fees at reasonable hourly rates subject to risk of litigation multiple: | $187,813.00 |
| Plus risk of litigation multiple of 50%: | 93,906.00 |
| Attorneys' fees at reasonable hourly rate for administration of the settlement agreement: | 25,000.00 |
| Fees of accounting firm, David Berdon & Co., at reasonable hourly rate: | 100,000.00 |
| Expenses in connection with opinion of financial expert, Corporate Capital Consultants, Inc.: | 10,000.00 |
| Disbursements and other expenses: | 6,078.00 |
| TOTAL AWARD TO DANNENBERG FIRM: | $422,797.00 |

**Award to Demov, Morris, Levin & Shein**

| | |
|---|---|
| Attorneys' fees at reasonable hourly rate: | $50,000.00 |
| Expenses and disbursements: | 2,818.00 |

**Award to Bernstein Hawkins & Katcher**

| | |
|---|---|
| Attorneys' fees at reasonable hourly rate: | $20,000.00 |

| | |
|---|---|
| GRAND TOTAL OF FEES, EXPENSES AND DISBURSEMENTS | $495,615.00 |