**GALDI SECURITIES CORP., on Behalf of Itself and All Others Similarly Situated, Plaintiffs,**

v.

**Seymour PROPP and Paul Gladston, Individually and as Executors of the Estate of W. Parsons Todd, Mortimer J. Propp, Edgar Grossman, Lewis G. Koepel, Ephraim Propp, William Todd Parsons, Harrison T. Todd, Samuel Oelbaum, Coopers & Lybrand and Quincy Mining Company, Defendants.**

No. 78 Civ. 2879.

United States District Court,
S. D. New York.

Dec. 28, 1979.

William Klein, II, New York City, Sp. Counsel for Austrian, Lance & Stewart, P. C., New York City, for plaintiffs.

Hughes, Hubbard & Reed, New York City, for defendant Coopers & Lybrand.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant Quincy Mining Co.

Zimet, Haines, Moss & Friedman, New York City, for defendant Seymour Propp et al.

## MEMORANDUM OPINION AND ORDER

LOWE, District Judge.

The parties to this securities class action apply for approval of a proposed settlement under Rule 23(e) of the Federal Rules of Civil Procedure.[1] Plaintiff's counsel also applies for allowance of attorney's fees and expenses.

### I. Facts

Plaintiff Galdi Securities Corp. ("Galdi") commenced this action on June 27, 1978 as a derivative action, pursuant to Federal Rule of Civil Procedure 23.1, and as a class action on behalf of all non-defendant public shareholders of defendant Quincy Mining Company ("Quincy"), pursuant to Federal Rule of Civil Procedure 23.

Plaintiff has been a stockholder of Quincy since 1970, and is the beneficial owner of 11,788 shares of Quincy or approximately ten (10%) percent of Quincy's outstanding shares. The stockholder class, including plaintiff, comprises more than 200 public shareholders who own about 49,000 shares or approximately thirty-five (35%) percent of Quincy's outstanding shares.

Defendant Quincy is a Michigan corporation organized in 1848 for the purpose of engaging in the business of mining and processing metals, primarily copper. Quincy has issued and outstanding 126,982 shares of common stock, par value $25.00, which shares are listed and traded on the Boston Stock Exchange. The individual defendants are past and present directors of Quincy who, together with associates, own or control approximately 77,799 shares or more than sixty-one (61%) percent of Quincy's outstanding shares.

The principal allegations of the complaint are: (1) Quincy, since 1972, has been operating as an investment company, as defined in the Investment Company Act of 1940, 15 U.S.C. §§ 80a-1 et seq., and the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-1 et seq., and not as a mining company; and that the individual defendants have failed to register under these Acts and to comply with their requirements, which allegedly resulted in depressing and diluting the value of Quincy's stock;[2] (2) As a result of such failure to register, the class was deprived, in violation of the Investment Advisers Act, of the benefit of a written approved management contract, an independent investment adviser and the opportunity to approve investment policies; (3) that the individual defendants, who are the majority shareholders of Quincy and comprise the majority of the Board of Directors, violated Section 10(b) of the Securities and Exchange Act of 1934 (" '34 Act") by seeking to freeze out the class by distributing false and misleading annual reports, form 10-k's, proxy statements and other communications that failed to disclose and concealed the fact Quincy's principal business is no

---

1. Federal Rule of Civil Procedure 23(e) provides,

   "(e) *Dismissal or Compromise.* A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."

2. Plaintiff claims that in 1970 Quincy terminated its mining business and since 1972 its principal business has been managing its portfolio of securities which plaintiff alleges has an aggregate market value of more than seventy-eight (78%) percent of the Company's total assets. Plaintiff claims that because the Company's investment securities have a value exceeding forty (40%) percent of the Company's total assets, Quincy is within the definition of an Investment Company under section 3(a) of the Investment Company Act, and section 8 of that Act required and requires Quincy to register thereunder, or obtain an exemption from registration.

longer mining but rather the buying and selling of marketable securities; (4) that the defendant Coopers & Lybrand, Quincy's accountants, issued a false opinion in connection with Quincy's financial statement, by failing to disclaim an opinion concerning Quincy's value of its mining property and the extent of its mining activities; and that Coopers & Lybrand allegedly aided and abetted the defendants in violating the Investment Company Act, the Investment Advisers Act and the '34 Act by falsely permitting Quincy's mining property to be listed as an asset; and (5) that the individual defendants breached their fiduciary duties to the class under the Michigan Business Corporation Act and the Common Law by using Quincy as a vehicle for their own tax, estate and other personal interests and purposes in conflict with the interests of Quincy and the class.

The complaint seeks damages against all defendants other than Coopers & Lybrand equal to the fair value of the Quincy shares held by the class; damages against Coopers & Lybrand for losses allegedly suffered by reason of their assistance to the defendants; an accounting for all fees, costs and expenses allegedly sustained by Quincy as a result of the failure to register under the Investment Company and Investment Advisers Acts; an accounting for all compensation received from Quincy by the defendant directors and for all costs and expenses paid by Quincy pursuant to the purchase and sale of securities by and for Quincy; for all damages allegedly sustained by Quincy arising from the defendant directors' alleged breach of fiduciary duties. Finally, the complaint seeks prompt dissolution of Quincy and the distribution of its assets pro rata to all shareholders.

Defendants maintain there is no substance to any of the charges made in the complaint and insist that there is no possibility that any liability could be imposed upon them. Defendants, in their answer to the complaint, deny they committed or participated in any violation of the Investment Company and Investment Advisers Acts, the '34 Act or Common Law arising out of matters alleged in the complaint, and disclaim all liability with respect thereto. At the hearing on the proposed settlement plaintiffs stated that they recognized that it is in the interests of all that this action be terminated without the substantial expense, inconvenience and distraction of burdensome and protracted litigation which all parties believe would occur without settlement. Defendants have agreed to the proposed settlement in order to end all controversies connected with the issues raised in the complaint and all claims that have been or might be asserted by any class member arising from the matters alleged in the complaint.

This Court has jurisdiction pursuant to Section 44 of the Investment Company Act, Section 214 of the Investment Advisers Act, Section 27 of the '34 Act, and on principles of pendent jurisdiction.

On June 13, 1979 this Court ordered that, for settlement purposes, this action be maintained as a derivative action pursuant to Federal Rule of Civil Procedure 23.1 and as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) on behalf of all persons who were beneficial owners of the capital stock of Quincy on that date. This Court further designated plaintiff Galdi as the representative of the class, and Austrian, Lance & Stewart, P. C., William Klein II, Special Counsel, as counsel for the class.

Pursuant to the June 13, 1979 order, and other amending orders, notice of the proposed settlement was mailed to each record owner of Quincy stock. The notice outlined the terms of the settlement and the fees and expenses sought by plaintiff's counsel, gave notice that a hearing on these matters would be held September 27, 1979, and informed class members of their right to object to the arrangement and to opt out of the settlement. On September 27, 1979 the noticed hearing was held, and there were no objections to the settlement and the fee application of plaintiff's counsel.

II. *The Settlement*

The settlement agreement was negotiated by counsel on both sides with the guid-

ance and approval of plaintiff Galdi. The terms of the settlement will enable minority stockholders to sell their stock to Quincy at a fair price and thereby free themselves of an investment in what has essentially become a private company.

The terms of the settlement provide that: (1) each stockholder, including the defendants who own Quincy stock, has the right to obtain in cash or portfolio securities $44.50 per share, less attorney's fees and expenses approved by the Court;[3] (2) plaintiff Galdi will receive all cash for its shares; (3) plaintiff Galdi is prohibited for ten years from directly or indirectly interfering with Quincy's corporate affairs, either alone or in concert with others; (4) defendant Quincy will pay the expenses of notification and administration of the settlement; (5) settlement is not to be construed or deemed evidence of an admission of liability by the defendants, or an admission by plaintiffs that the action is without merit; (6) upon approval of the settlement, the action shall be dismissed with prejudice as to all claims asserted or which might have been asserted on the merits as to all named defendants. Plaintiff and class members who did not opt out are permanently enjoined from such claims.

Stockholders owning 33,633 shares have filed proofs of claim. At $44.50 per share, they will be paid, before attorney's fees and expenses are deducted, an aggregate of $1,765,003.50. Eight stockholders owning 6,003 shares have opted out.[4] No one has objected to either the proposed settlement or the attorney's application for fee award.

### III. *Evaluation of the Proposed Settlement*

The Court will approve a proposed settlement of a class action if the proposal is fair, reasonable and adequate. *Feder v. Harrington*, 58 F.R.D. 171 (S.D.N.Y.1972). If the proponents of the settlement prove

that (1) the settlement is not collusive but was reached after arm's length negotiation; (2) the proponents have counsel experienced in similar cases; (3) there has been sufficient discovery to enable counsel to act intelligently; and (4) the number of objectants or their relative interest is small, then the proponents have established a strong initial presumption that the compromise is fair and reasonable. *Id.* at 174–175; *See, Josephson v. Campbell*, CCH Fed.Sec.L.Rep. [1967–69 Transfer Binder] ¶ 92,347 at 97,658 (S.D.N.Y.1969).

This Court finds that the proponents of the settlement have established the four propositions stated above:

(1) The negotiations between plaintiff's counsel and defendants' counsel took place at arm's length. The affidavits of plaintiff Galdi and plaintiff's counsel described the six year pre-litigation history and the arm's length nature of the negotiations.[5] Also, there has been no suggestion of collusion.

(2) Counsel on both sides are highly respected members of this Bar and have substantial experience in stockholder litigation, federal securities litigation and class action litigation.

(3) While there was no formal discovery conducted, there was substantial information available to plaintiff and its counsel for them to negotiate and enter into the proposed settlement. There was available from the public records, and from Quincy, information the proponents would have obtained had they conducted formal discovery proceedings. Moreover, Joseph Galdi, President and controlling shareholder of plaintiff and an expert in securities with substantial experience in the field, advised plaintiff's counsel that he was satisfied that he had the necessary information for him to make an informed judgment as to the value of Quincy's shares.[6]

---

3. The Stipulation of Settlement limits attorney's fees and expenses to a maximum of $150,000 or $2.50 per share, whichever is less. Plaintiff's attorney has applied for an award of $99,157.50.

4. One of the eight stockholders opting out is the trustee of a trust owning 5,260 shares.

5. Affidavit of William Klein II in Support of Settlement 3.

6. *Id.* at 8.

(4) There are no objections to the proposed settlement, and stockholders owning 33,663 shares have filed proofs of claim. Eight stockholders owning 6,003 shares have opted out, one of whom is the trustee of a trust owning 5,260 shares.

The initial presumption of fairness which the proponents have established must still withstand the universally recognized test of the plaintiff's likelihood of success. *Feder v. Harrington*, 58 F.R.D. at 175. The court's function, under this test, is to determine the probabilities of ultimate success should the claims be litigated. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1, 9 (1968). This requires the court to form an educated estimate of the strengths and weakness of the plaintiff's case by considering (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action throughout the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of the reasonableness of the settlement in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 463 (2d Cir. 1974); *See, e. g., Weiss v. Drew National Corp.*, 465 F.Supp. 548, 551 (S.D.N.Y. 1979).

An examination of these factors shows the following:

(1) Continued litigation would be complex, expensive and lengthy. Both sides have expert witnesses who would testify as to the valuation of Quincy's assets, whether or not the Company should have registered as an Investment Company, and concerning prior registration activities before the Securities and Exchange Commission. The dispute already has a six year history, and there is a possibility that litigation could continue for years to permit depositions, discovery, a trial and appeals.

(2) The reaction of the class to the settlement has been very favorable. Between the negotiations and the pre-trial proceedings all parties were sufficiently aware of the probabilities of success. Both sides had ample opportunity to present their reasons supporting or opposing the settlement at the court hearing held for this purpose on September 27, 1979. The lack of objection and the high number of proofs of claim received from the class members suggest that they find the settlement reasonable.

(3) Legal proceedings were in the early stages when settlement discussions began. Both sides were discussing settlement shortly after the complaint was served and before an answer was filed. Under the circumstances, plaintiff's counsel did not deem it necessary, in the interests of the class members, to make an extensive investigation or conduct extensive discovery proceedings. However, plaintiff and its counsel reviewed reports filed by Quincy with the Securities and Exchange Commission, examined Quincy's portfolio of investment securities and reviewed appraisal reports furnished by Quincy with respect to its principal real estate properties before concluding that the settlement provided fair value for shares of Quincy stock.

(4) The risk of establishing liability is high for plaintiff. There is considerable question whether plaintiff can prove its key allegation underlying each of its five claims—that defendants are engaged in the investment securities business in violation of the Investment Company Act and Investment Advisers Act. First, Quincy filed a nineteen page application for exemption from registration, at the original request of the Securities and Exchange Commission staff, and supplemented it with a ten page addition. The Commission never acted on the application, nor requested that Quincy register. Since the Commission had all the facts before it for more than two years, and since it has primary jurisdiction for enforcement of the Investment Company Act and Investment Advisers Act, these facts could

adversely affect plaintiff's claim. The Investment Company Act requires that the determination of whether or not a company has forty (40%) percent of its total assets in securities investments be based upon an unconsolidated basis. In Quincy's application for an exemption, the Company asserted that on an unconsolidated basis its portfolio of securities represented less than forty (40%) percent of its total assets. As of December 31, 1978 plaintiff claims that the records disclose no substantial change.[7] Paragraph 13 of the complaint, in alleging that the percentage of securities to total assets ranges from seventy-four (74%) percent to seventy-eight (78%) percent between 1973 and 1977, did so based upon a consolidated, rather than unconsolidated, basis. The valuation of Quincy's assets would involve a battle of experts that would not necessarily be dispositive of the registration issue. Moreover, even if Quincy exceeded the forty (40%) percent limit, an exemption might still be available,[8] and if not, the forty (40%) percent test merely creates a presumption of investment company status which may be rebutted.[9]

Plaintiff's likelihood of success on its first two claims, the central issue to its case, is uncertain; it is also apparent that the outcome for plaintiff on its remaining three claims is not free from doubt. If Quincy was not required to register, then the defendants may not have made the misrepresentations which the plaintiff's third claim alleges violated Section 10(b) and Rule 10b–5 of the '34 Act.

Plaintiff's fourth claim, against the accountants Coopers & Lybrand for issuing a false opinion in connection with Quincy's 1977 financial statement by failing, allegedly, to disclaim an opinion, and for aiding and abetting the defendants in violating the Investment Company Act, the Investment Advisers Act and the '34 Act by falsely permitting Quincy's mining property to be listed as an asset, was the subject of a motion to dismiss by the accountants. Plaintiff admits that defendants Coopers & Lybrand raised serious questions as to the fourth claim, independent of the Investment Company Act, and their memorandum in support of the motion to dismiss cites substantial authorities and raises material questions which indicate that plaintiff's likelihood of success against Coopers & Lybrand is as questionable as its prospects on its other claims.[10] Also, there is a growing reluctance in this district, as in others, to impose liability upon accountants, except in the clearest of cases.[11]

Plaintiff's fifth claim, which arises under the Michigan Business Corporation Act and the Common Law, seeks dissolution of Quincy on the grounds that failure to register and the Company's alleged scheme to conceal that Quincy was no longer in the mining business constituted such an abuse of fiduciary obligation as to justify dissolution. If plaintiff fails to prevail on its Investment Company Act claim, then the Court may not reach the fifth claim, under the principles of pendent jurisdiction. However, if the fifth claim is considered, it would have the same problem as the other four claims because its genesis lies in the failure of Quincy to register under the Investment Company Act.

(5) Plaintiff's risks are high in attempting to establish damages. Based upon the substantial possibility that the defendants might prevail at trial, there is an equally strong possibility that the plaintiff and class members would not be able to obtain the liquidation of Quincy, which is their

7. Memorandum of Plaintiffs in Support of Settlement 14.

8. See, e. g., GPI, Inc., 1973 CCH SEC ' 79,437.

9. Bessemer Securities Company, 13 S.E.C. 281, 284 note c. (1943).

10. Memorandum of Plaintiffs in Support of Settlement 25.

11. See, Weinberger v. Kendrick, 451 F.Supp. 79 (S.D.N.Y.1978); Denny v. Barber, 576 F.2d 465 (2d Cir. 1978); Jacobson v. Peat, Marwick, Mitchell & Co., 445 F.Supp. 518 (S.D.N.Y. 1977); Landy v. FDIC, 486 F.2d 139 (3d Cir. 1973), cert. denied, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974); S. E. C. v. Republic National Life Insurance Co., 378 F.Supp. 430 (S.D.N.Y.1974).

requested relief, and perhaps would receive nothing at all.

(6) The risks of maintaining the class action throughout the trial may also be high. The class has been certified by an order based upon a stipulation that the certification was for the purpose of settlement negotiations. If a trial were to replace settlement, the court would have to review whether the class representative would satisfy the requirements of Federal Rule of Civil Procedure 23.

(7) Defendants would not have the ability to withstand a greater judgment than for the relief of liquidation of Quincy, requested in the complaint, since liquidation would terminate the Company. Defendants do have the ability, however, to withstand judgment greater than the proposed settlement of $44.50 per share. Yet, for the reasons discussed below in (8), the $44.50 per share settlement is fair when considered against the best possible recovery.

(8) The best possible recovery for plaintiff and the class members appears to be $65.00 per share, which price is the fair value of Quincy's common stock if all of Quincy's assets were liquidated at market value. As of December 31, 1978, the balance sheet book value of Quincy, which treats the Company's assets at their cost in accordance with generally accepted accounting principles, is $36.00 per share.[12] Since the complaint seeks liquidation, using market value as criteria, the $44.50 per share settlement price represents less than a one-third discount from what stockholders would receive on liquidation if their suit was successful. Plaintiff states, and this Court agrees, that under present inflationary conditions and high interest rates, a settlement payable within a short period of time at $44.50 per share, less court approved fees and expenses not in excess of $2.50 per share, may be more valuable to class members than the possibility of receiving a larger amount in a judgment which might not be obtainable for several years. Moreover, there is a substantial probability that plaintiff may not prevail in the action and the class members would receive nothing at all.

(9) This Court considers the settlement fair and reasonable in light of all the attendant risks inherent in litigation and potential time consuming appeals, and particularly the advantage to the class of the opportunity to be paid at so early a stage in the litigation, in a situation where the prospect of achieving greater value is conjectural and the market for Quincy's shares is highly limited.

### IV. *Attorneys' Fees and Expenses*

Plaintiff's counsel have submitted an application for fees and expenses. Under the settlement agreement, the application is limited to the lesser of $150,000 or $2.50 per share for which a proof of claim is filed. Plaintiff's counsel have requested $99,157.50 (inclusive of expenses), calculated at the rate of $2.50 for each of the 39,663 shares for which claims were filed. This amount represents 1.75% of the total benefit for all shares; 4.5% of the benefit available to minority shares; and 5.6% of the benefit to those who filed proofs of claim.[13]

The Court has general equitable power to award fees out of the settlement fund to those who have brought a benefit to the class members. The fee application must be reviewed, however, considering not only an award of just compensation to the attorneys for their work, but also the necessity to protect the rights of the class members. *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 470- 71 (2d Cir. 1974).

The *Grinnell* case requires that an evidentiary hearing be held to determine the propriety of the fee. The Court accepted evidence in affidavit form, and heard presentations of counsel at the September 27, 1979 hearing.

---

**12.** Affidavit of Joseph C. Galdi in Support of Settlement 2–4.

**13.** At $44.50 per share, the total benefit available had all 129,982 outstanding shares been tendered, is $5,650,699; and for the 49,000 minority shares, the benefit is $2,180,500. The 39,663 shares, for which proofs of claim were filed, will receive $1,765,003.50 upon tender of their certificates.

The application of plaintiffs' counsel contains an affidavit setting forth the time spent by each attorney and multiplying that time by the rate at which that attorney's time is currently billed. Under this computation, counsel value their time at $51,170. The Court, in evaluating the attorneys' time, is directed by *Grinnell* to take the time spent by each partner and associate on the case and multiply those hours by a reasonable hourly rate determined by what a lawyer of like skill in the area would get. *City of Detroit v. Grinnell Corp., supra* at 470–71. The hourly rate to be applied is not the current rate but the rate in force when the work was done. *Weiss v. Drew National Corp., supra* at 552; *Kane v. Martin Paint Stores, Inc.,* 439 F.Supp. 1054, 1055 (S.D.N.Y.1977). Also, the valuation of an attorney's time should vary with the type of work he or she does. Routine or clerical matters should receive a lower valuation than complex ones. *City of Detroit v. Grinnell Corp., supra* at 471. The affidavit of plaintiff's counsel is drafted in accordance with these standards. Accordingly, this Court finds that this portion of plaintiff's counsel fee application is proper, fair, reasonable and should be awarded.

An increase in the award of attorneys fees over and above the amount of time charges incurred is proper where, as here, counsel undertake the burden of prosecuting derivative or class actions on a contingent basis, and succeed against long odds to recover a substantial benefit for the class. *Kane v. Martin Paint Stores, Inc., supra* at 1058; *Stull v. Baker,* 410 F.Supp. 1326, 1338 (S.D.N.Y.1976). Had the attorneys here been unsuccessful in their efforts against defendants, they would have received no compensation. This risk factor bonus for successful representation exists to insure that lawyers will continue to support rights that might otherwise go unprotected.

The amount of bonus depends upon the probability of success had the case gone to trial. The lower the probability of success, the higher the bonus should be. *Weiss v. Drew National Corp., supra* at 553. In this case, the settlement provides the class members relief they might not have received, even after trial and appeal, i. e., the freeing of minority shareholders who were frozen in a company with virtually no market for its shares. The legal issues are complex, and the substantial risks of litigation faced by plaintiffs have been set forth earlier in this opinion.

Traditionally, courts in this district and elsewhere have awarded fees of 20% to 30% of the recovery. *Feder v. Harrington, supra* at 177. An award of 10.5% of the value of settlement has been found to be within or below the range generally found to be fair and reasonable in such cases. *Frankenstein v. McCrory Corp.* 425 F.Supp. 762, 769 (S.D.N.Y.1977). The fee request of plaintiff's attorneys is unusually low, 1.75% of the total benefit and 5.6% of the actual amount to be paid out. Accordingly, this Court finds that when tested by any and all of the foregoing criteria, the application of plaintiff's counsel for a fee award of $99,-157.50, including expenses, is fair and should be approved.

## V. *Conclusion*

The foregoing represents the Court's findings and conclusions of the reasonableness of the settlement and attorneys' fees.

## VI. *Order and Judgment*

The proposed settlement of this action and plaintiff's application for an award of counsel fees (as amended) in the amount of $99,157.50 including disbursements, came to be heard on September 27, 1979, before this Court, in accordance with the Orders of this Court entered June 13, 1979 and June 22, 1979, and at said hearing all interested parties having been present and afforded the opportunity to be heard;

*Now,* upon consideration of the papers submitted, the oral argument by counsel and in accordance with this opinion, it is hereby

ORDERED, ADJUDGED AND DE-CREED THAT:

1. The terms and conditions of the settlement as set forth in the Stipulation and Agreement of Settlement dated May 15,

1979, (the "Settlement Agreement"), are in all respects, fair, reasonable and adequate, and are hereby approved by this Court, and shall be consummated as provided in the Settlement Agreement.

2. The above-captioned action, the complaint therein and all claims asserted or which might have been asserted therein are hereby dismissed without costs, with prejudice and on the merits against plaintiff and class members and in favor of all named defendants, whether or not served with a summons and complaint, including their successors and assigns.

3. Any dispute arising from a Proof of Claim submitted in accordance with the Orders of this Court shall be disposed of as agreed upon by counsel for plaintiff and defendants, or as directed by the Court upon application.

4. Plaintiff and all class members and their heirs, executors, administrators, personal representatives, successors and assigns are hereby permanently enjoined from prosecuting any individual, class or derivative claims arising out of or relating to the matters set forth in the complaint, against any of the named defendants whether or not served with a summons and complaint, their personal representatives, trustees, heirs, and assigns; and, in addition, all Quincy shareholders are hereby permanently enjoined from prosecuting any derivative claims arising out of or relating to said matters.

5. Plaintiff's attorney, William Klein II (Special Counsel for Austrian, Lance & Stewart, P.C.) is hereby granted and awarded an allowance for attorneys' fees and disbursements in the amount of $99,157.50 in cash, which shall be paid and distributed to him by defendant Quincy Mining Company as provided in the Settlement Agreement.

6. Jurisdiction is hereby retained by this Court for the purpose of entering such further orders as may be necessary or appropriate in administering or effectuating the provisions of the Settlement Agreement.

7. Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, it is expressly found that there is no reason for delay in the entering of this Order and Judgment and consummation of the Settlement as to all matters, except those for which jurisdiction is retained.

IT IS SO ORDERED.